KOWALKOWSKI, Respondent, vs. MILWAUKEE NORTHERN
RAILWAY COMPANY, Appellant.

*March 20—June 17, 1914.*

*Street railways: Injury to person driving along track: Contributory*
*negligence: Question for jury.*

1. Ordinary care requires a person about to cross or drive upon a
   street railway track to look in both directions and listen for
   approaching cars at a point where it is reasonably certain that
   such efforts will accomplish their purpose, his duty in this re-
   gard being identical with that of a person approaching the track
   of a steam railway.
2. It is the duty of a person traveling along a street railway track
   to give way in due season to an approaching car, whether com-
   ing from the front or the rear, and to exercise ordinary care not
   only to discover when a car is approaching but to turn off from
   the track in time to prevent a collision.
3. The question of ordinary care is generally a relative question, de-
   pending upon the facts surrounding each case.
4. On a dark winter evening, at a time when the track was clear in
   both directions, plaintiff, with a single horse and a wagon loaded
   with coal, drove upon and proceeded along defendant's street
   railway track. He looked back about every half block, but saw
   no car coming until the last time. Then, seeing a car approach-
   ing from behind, he attempted to turn off from the track upon
   the rough unpaved highway, but the rear wheel of his wagon
   was struck and he was injured. The car had no headlight ex-
   cept a sixteen candle-power incandescent light with a reflector
   on the roof, and the night was gloomy, with snow flurries.
   There was evidence that the car was behind time and was run-
   ning twenty miles or more per hour, that its gong was not rung
   or its speed slackened as it approached plaintiff's wagon, and
   that no attempt was made to stop it until after the collision.
   *Held,* that plaintiff was not guilty of contributory negligence as
   matter of law.

APPEAL from a judgment of the circuit court for Milwau-
kee county: BYRON B. PARK, Judge. *Affirmed.*

Action for personal injuries. The plaintiff, while driving
a single horse and wagon westward on Atkinson avenue in the
city of Milwaukee on the evening of January 13, 1912, at a

few minutes before 6 o'clock, was run into from the rear by one of the defendant's urban street cars, thrown from his wagon, and seriously injured. The plaintiff had a ton of coal in his wagon which he had procured at the so-called Gibson station on the Port Washington road, and was taking the same to his house on the corner of Nineteenth street and Atkinson avenue. He came from the north and reached Atkinson avenue on Eleventh street, which crosses Atkinson avenue nearly at right angles. Plaintiff testifies that he stopped before turning westward· on Atkinson avenue because he saw a car to the westward "at the loop on Twentieth and Atkinson avenue" coming eastward, and that he remained there until this car, which was an interurban car, passed him and went eastward; that after this car passed he turned westward on Atkinson avenue and drove on to the street-car track, which at this point is a single track; that the night was cold, the highway unpaved, and the street so rough that it was difficult for his horse to obtain a footing anywhere except on the street-car track; that for this reason he continued to travel westward upon the street-car track; that he looked back from time to time to see whether any car was approaching from the rear; that he looked back at about Twelfth street and again at a point about half way between Twelfth and Thirteenth streets and saw no car; that he looked back at about Thirteenth street and saw a car, which, however, turned off towards Lindwurm Park before reaching him; that he looked back between Thirteenth and Fourteenth streets and saw no car; that as he reached Fourteenth street he looked around for his whip and saw a car coming; that he hollered all he could and turned his horse to the left, but was unable to get clear of the track, and the car struck the rear wheel of the wagon, wrecking it and throwing the plaintiff to the ground. It appears that both urban and interurban cars operate over the piece of track in question, the interurban cars being larger and carrying an arc headlight on the front dashboard,

while the urban cars carry only a sixteen candle-power in-candescent light "over the first roof of the car, pretty well to the front," with a parabolic reflector; that the car in ques-tion was one of the urban cars. The motorman claims that he first saw plaintiff's wagon when the car was from 60 to 100 feet distant; that he sounded the gong, reversed the cur-rent, and threw sand on the rail, but that the rail was slippery and the car could not be stopped in time and struck the right wheel of the wagon as it was on the south track. Plaintiff's witnesses estimated the speed of the car at from eighteen to twenty-five miles an hour, while defendant's witnesses esti-mated it at about ten miles an hour. The plaintiff testified that he heard no gong sounded, and one of the passengers on the car testified that the gong was not sounded. The car ran some distance after the crash, the estimates of the wit-nesses varying from 100 feet to nearly a block.

The jury returned a special verdict to the effect (1) that the defendant negligently operated the car; (2) that such negligence was the proximate cause of plaintiff's injury; (3) that no want of ordinary care on plaintiff's part proxi-mately contributed to the injury; and (4) that plaintiff's damages were $8,000. From judgment for the plaintiff on this verdict the defendant appeals.

For the appellant there were briefs by *Flanders, Bottum, Fawsett & Bottum,* attorneys, and *James G. Flanders,* of counsel, and oral argument by *James G. Flanders.*

For the respondent there was a brief by *O'Connor, Schmitz, Wild & Gross,* and oral argument by *A. J. Schmitz* and *E. J. Gross.*

The following opinion was filed April 9, 1914:

WINSLOW, C. J. The appellant's case is based on the proposition that the evidence shows contributory negligence on the part of the plaintiff as matter of law, and to this proposition we direct our attention.

The law is well settled in this state that ordinary care re-
quires a person about to cross or drive on to a street railway
track to look in both directions and listen for approaching
cars at a point where it is reasonably certain that such ef-
forts will accomplish their purpose.   In this respect the duty
of the traveler approaching a street railway track is identical
with the duty of the traveler approaching the track of a
steam railway.   *Tesch v. Milwaukee E. R. & L. Co.* 108
Wis. 593, 84 N. W. 823; *Cawley v. La Crosse City R. Co.*
106 Wis. 239, 82 N. W. 197; *Grimm v. Milwaukee E. R. &
L. Co.* 138 Wis. 44, 119 N. W. 833.   When, however, the
question arises as to the duty of a person traveling upon the
street lengthwise of the street railway track, it is plain that
there can be no very close analogy between steam railroads
operating cars upon their own right of way and street rail-
roads operating cars upon the public street.   The difference
of situation necessarily creates different standards of conduct.
The traveler has no right to travel upon the inclosed right of
way, but he has a right to travel upon that part of the high-
way covered by the street railway track when it is not re-
quired for the passage of street cars in the performance of
that duty which street-car companies assume to the public.
From the very nature of the situation the citizen must defer
to the street car when using this part of the public street.
The street car is of great size, must travel at a considerable
speed to perform its duties as a common carrier under mod-
ern conditions, necessarily acquires great momentum, can-
not be momentarily stopped, and cannot turn out.   The def-
erence required of the traveler is not so much deference to
the street-car company as it is deference by one citizen to
that very large number of his fellow-citizens who are being
constantly transported by street cars, who cannot themselves
control the movements of the cars, and whose right to speedy
and safe transportation upon the vehicles of a common car-
rier must naturally be held to be paramount.   *Watermolen v.*

*Fox River E. R. & P. Co.* 110 Wis. 153, 85 N. W. 663. So it is manifestly the duty of the traveler who chooses to travel along that part of the street occupied by the street railway track to give way in due season to an approaching car, whether approaching from the front or the rear, and it follows necessarily that it is his duty to exercise ordinary care not only to discover when a car is approaching, but to turn off from the track in time to prevent a collision. The question here is whether the evidence conclusively shows that the plaintiff failed to exercise this degree of care at the time of the accident, and this question is a reasonably close one. The question of ordinary care is generally a relative question, depending upon the facts surrounding each case. For this reason the citation of adjudicated cases is not very helpful, as there is always a difference in the facts. There is nothing in the present case to indicate that the plaintiff was negligent in going on to the track in the first instance. If his testimony is to be believed, and there is nothing to shake it on this point, he waited until a car from the west passed him and went eastward, so that the track was clear in both directions before he ventured on the track. The night was dark, the highway (except where the track was laid) so rough as to make traveling hard, if not positively dangerous. Naturally he chose the part covered by the track and proceeded westward. It was his duty unquestionably to make frequent observation to the rear to see whether a car was following him. The blocks on Atkinson avenue were about 350 feet long. The plaintiff claims that he looked back about every half block from Twelfth to Fourteenth streets, and saw no car coming until his last observation. Had it been daylight at the time, this evidence would unquestionably have to be rejected as incredible, for the track was clear and no sufficient difference existed in the grade of the track to affect the ability to see a car approaching from the rear. It is contended that the same conclusion must be reached notwithstanding the fact that it

was dark, because it is said that the plaintiff must have seen
the headlight of the car which struck him and which had
turned on to Atkinson avenue at Sixth street.   Had this car
borne an arc headlight on the dashboard, such as the interur-
ban cars bore, this contention would be very difficult, if not
impossible, to meet.   It bore, however, only a sixteen candle-
power incandescent light with a reflector on the forward part
of the roof.   It may well be that this comparatively feeble
light in the position in which it was would not necessarily at-
tract the attention of a man taking occasional glances back-
ward, or if seen would not be identified as the light of an
approaching car.   The motorman testified that the night was
gloomy, that there had been snow flurries during the day and
were snow flurries that night.   If the plaintiff's testimony is
to be believed, he saw the car the last time he looked around
and immediately proceeded to turn his horse to the left into
the highway proper.   This must under all the circumstances
have been a slow operation.   The wagon contained a ton of
coal beside the driver and the horse was compelled to make
his way into and over a rough and hummocky country road.
The movement had been so far accomplished that the car
struck only the last wheel of the wagon as it was clearing the
south track.   The time taken in this operation must have
been considerable.   It seems to demonstrate that the car (if
moving at anywhere near the rate testified to by the plaint-
iff's witnesses) must have been a considerable distance away
when the plaintiff looked around and saw it approaching.
It appeared by the evidence of the motorman that the car
was about ten minutes behind time.   While the motorman
denied that he was attempting to make up time, there was
sufficient evidence to justify the jury in concluding that the
car was going at a speed of twenty miles or more an hour at
the time, that the gong was not rung nor the speed slackened
as the car approached the plaintiff's wagon,—in fact that no
attempt was made to stop it until the wagon had been struck.

Of course, the failure of the motorman to perform his duty does not excuse a traveler from failure to perform his duty, *i. e.* to exercise ordinary care. However, the fact that signals are required to be given and normally are given as a car approaches from the rear is a fact which is entitled to be considered when the mind is endeavoring to determine what the ordinary man would do under the circumstances which surrounded the plaintiff. In other words, it is one of the circumstances.

In view of all the facts, and especially in view of the conclusion reached by the trial judge to the effect that there was sufficient evidence to support the jury's findings, we feel that we cannot say, as matter of law, that the plaintiff failed to exercise ordinary care.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 17, 1914.