ENGEN, Administrator, Respondent, vs. CHIPPEWA VALLEY RAILWAY, LIGHT & POWER COMPANY, Appellant.

*February 5—February 25, 1916.*

*Street railways: Injury to passenger: Negligence: Excessive speed on curve: Contributory negligence: Standing on platform: Questions for jury: Evidence: Harmless errors: Excessive damages: Examination of discharged employee as adverse witness.*

1. In an action for injuries sustained by a passenger who was thrown from the vestibule of defendant's interurban car as it was turning a street corner, the evidence—including testimony of the motorman that the speed did not exceed from five to seven miles per hour, and testimony of other passengers as to the

effect produced by rounding the corner at the rate at which the car was going—is *held* to sustain a finding by the jury that defendant was negligent in running the car at an excessive speed around the curve.

2. Whether or not a passenger is guilty of negligence in riding on the platform of a street car when there are vacant seats inside is ordinarily a question for the jury, although cases may arise where negligence is so clearly established as to be a matter of law.

3. It appearing in this case that the accident happened within the limits of a city, where the interurban cars performed the usual functions of urban street cars, that there was no rule forbidding passengers to occupy the platform, and that during this same trip other passengers had ridden upon the platform without protest from the conductor, a finding by the jury, approved by the trial court, acquitting the injured passenger of contributory negligence is *held* not so clearly wrong that this court should disturb it, although it also appeared that he had been standing close to the edge of the platform next to the open door, that he was not holding on to anything, that he was familiar with the road and the various turns the car would have to make, and that he knew there were vacant seats inside.

4. In an action for injuries sustained by a person whose death resulted from other causes prior to the trial, the court having instructed the jury that no damages could be assessed for the death, no harm resulted from the admission of expert testimony tending to show that his death might have been hastened to some extent by the injuries.

5. An award of $1,800 for injuries causing deceased to suffer a good deal of pain and to be disabled for a long period of time,—part of which time he was at the hospital,—is *held*, though large, not so excessive as to warrant this court in disturbing it.

[6. Whether it was error to permit a discharged employee of the defendant company to be examined as an adverse witness, is not determined, such error, if any, being harmless.]

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Bundy & Wilcox,* and oral argument by *Roy P. Wilcox.*

*Fred Arnold,* for the respondent.

PER CURIAM.    The plaintiff brings this action as administrator of the estate of J. O. Engen, deceased, to recover

damages for personal injuries sustained by the deceased while a passenger on one of the defendant's interurban cars and while going from Chippewa Falls to his home in Eau Claire. The deceased was standing in the vestibule in the rear end of the car, and while it was turning a street corner he was thrown off and suffered injury. The negligence alleged was the running of the car at an excessive rate of speed and the failure to keep the vestibule doors closed. The jury found that the defendant was negligent in both regards. The trial court held that there was sufficient evidence to warrant the jury in finding that the car was running at a negligent rate of speed at the time of the injury, but held that the evidence was not sufficient to sustain the finding that the defendant was negligent because it failed to keep the vestibule doors closed, and accordingly set this finding aside. The jury also acquitted the deceased of contributory negligence. On the verdict as corrected judgment was entered for the plaintiff, and defendant appeals therefrom.

The appellant argues that the evidence was wholly insufficient to sustain the finding of negligence; that the deceased was guilty of contributory negligence as a matter of law; that the court erred in permitting a former employee of the defendant to be examined as an adverse witness; and that the damages assessed are excessive.

On the question of defendant's negligence it is argued that the only testimony of any value tending to show the rate of speed was that given by the motorman; that his evidence was to the effect that the car was not rounding the corner at a speed to exceed from five to seven miles an hour, and that it cannot be held negligence as a matter of law for a car to turn a corner at this rate of speed, because it was not shown to be contrary to the usual method of operation. There was other testimony in the case bearing on this question which was quite as important as that given by the motorman. He did not pretend to have any accurate means of measuring the rate of speed, and in fact his testimony shows that he did

little more than to make an estimate. Such estimate may have been entirely honest, and the occupation of the witness was such that he was better qualified to fix the rate of speed at which the car was going than an ordinary witness would be. In fact none of the other witnesses who testified on the point attempted to say how fast the car was proceeding, but testified to the effect produced by rounding the corner at the rate at which the car was going. Such evidence is fully as convincing on the question of whether the speed was excessive as any estimates would be of the actual number of miles per hour which the car was traveling. The witness Steady testified that he didn't know how fast the car was going, but he did know they struck the curve "at an awful gait," and that as the curve was struck his left shoulder and the side of his head were thrown against the partition on the side of the car window and that he was thrown over there from about the middle of the car seat. At least one other witness testified to much the same state of facts, although he did not claim the jolt was quite as severe as it was stated to be by Mr. Steady. If we assume that the testimony of the motorman was correct, still, if turning the corner produced the results that were testified to by some of the other witnesses, it was fairly within the province of the jury to say that the defendant was negligent in running the car at even that rate of speed around the curve.

The issue on the contributory negligence of the deceased raises a much closer question. Deceased had been standing on the vestibule platform while the car was going a considerable distance. There is hardly any room for saying that he went out there so as to be ready to step off the car when his place of destination was reached. The vestibule was a very small one, calculated to furnish a way of ingress to and egress from the car rather than for the purpose of carrying passengers. The door to the left side of the car was closed and a tool box was placed in front of it, which was used to

some extent as a seat by passengers. Deceased stood in a space 24 x 27 inches, between the car step on the right-hand side of the car, the car window, and the controller box. He had plenty of opportunity to take hold of something if he desired to do so. He must have known that the door at the right side of the vestibule was open, that he was standing very close to the edge of the platform next to the open door, and that even a moderate side sway of the car in turning a corner might cause him to lose his balance and have a tendency to throw him off. He was thoroughly familiar with the road, having traveled it many times, and knew of the various turns that the car would have to make before reaching the place where he desired to alight. The deceased was perfectly sober, he knew that there was an abundance of vacant seats inside of the car and that there was space on the platform which he might occupy without danger, and also that he might protect himself where he was by taking hold of handholds or other objects within his reach. He stood in about as dangerous a place as he could stand, without taking any precautions to protect himself against contingencies that he should have known were likely to happen.

On this state of facts the question arises whether the court should say as a matter of law that the deceased did not exercise ordinary care for his safety or that on the evidence a jury question was presented.

In the case of steam roads it is very generally held that it is negligence *per se* for a passenger to stand on a car platform where there is a seat provided inside for his accommodation. This court seems to have approved of that doctrine, although the point was not directly before it, in *Miller v. C., St. P., M. & O. R. Co.* 135 Wis. 247, 115 N. W. 794. Many of the cases laying down the general rule referred to will be found there.

The situation in reference to street cars, however, is very different from that pertaining to steam roads. The trains

of the latter run at a high rate of speed and make compara-
tively infrequent stops.    Ordinarily every traveler is pro-
vided with a seat for his convenience and comfort.    This is
essential because of the long journeys that are made on these
cars.    In the case of street cars the public are expected and
invited to ride on platforms at certain times when there are
overflow crowds that cannot be given seats.    It does not ap-
pear here that there was any rule of the company forbidding
passengers to occupy platforms when there were vacant seats
inside.    It does appear that on the journey in question there
were passengers at one time or another on the platform of
this car during most of its journey from Chippewa Falls to
Eau Claire, and that no protest was made against their be-
ing there by the conductor in charge of the car.

There are three lines of decisions bearing on this question.
Some courts hold that it is negligence *per se* for a passenger
to stand upon the platform of a street car while it is in mo-
tion if there are vacant seats inside.    Other courts hold that
it is always a question for the jury to say whether or not a
passenger is guilty of negligence in riding on the platform of
a street car.    Still other courts hold that the inquiry should
be and is, Did the passenger fail to exercise ordinary care?
and that under most situations this is a question for the jury,
but that cases may arise where negligence is so clearly estab-
lished that it is the duty of the court to say as a matter of
law that the passenger was guilty of contributory negligence.
This we deem to be the correct rule of law.    It might be said
here that it fairly appears that inside the limits of the cities
of Eau Claire and Chippewa Falls the interurban cars of the
defendant perform the usual functions of urban street cars
and that the accident in question occurred within the cor-
porate limits of the city of Eau Claire.

The question of the contributory negligence of the de-
ceased was here submitted to the jury and it found that he
exercised ordinary care.    This finding has received the ap-

proval of the trial court. If this court were passing upon this question as a trier of fact it might find it difficult to say that the great mass of mankind under similar circumstances would have acted as the deceased did, although there might be a difference of opinion about that proposition. The jury and the trial court were in a better position to determine that question than is this court, and they have said that men of ordinary care and prudence customarily take the chances which the deceased did in this case. We do not feel sufficiently certain that they are wrong to warrant us in disturbing that conclusion.

It is claimed that the damages, $1,800, are excessive, and they are certainly pretty high for the injury received. The deceased died from a complication of diseases not in any way traceable to the injury and not as a result of the injury itself, although there is a little expert evidence tending to show that his death might have been hastened to some extent by his fall. Error is assigned on the admission of this testimony; but in view of the fact that the court instructed the jury that no damages could be assessed for the death of the deceased, no harm was done. The deceased was at the hospital for some time and according to the evidence suffered a good deal of pain and his disability extended over quite a long period of time, and we cannot say that the damages assessed here are any more liberal than many other assessments have been where the court has refused to disturb them.

It is not necessary to discuss the assignment of error arising out of the examination of the discharged employee as an adverse witness, further than to say that should error be conceded it was entirely harmless. We do not wish to be understood as intimating that any error was committed. We simply refrain from discussing and deciding the legal question raised.

Judgment affirmed.