Griebenow, Respondent, vs. Chicago & Milwaukee Electric Railway Company, Appellant.

*March 4—April 2, 1919.*

*Street railways: Injury to passenger falling from platform: Negligence of conductor: Evidence: Question for jury.*

1. Evidence showing or tending to show that an adult passenger on a street car, in full possession of his faculties and familiar with the streets over which the car was passing, got up from his seat when the car—which was then running at a high but not unusual rate of speed and was swaying from side to side— was less than a block from his destination, and, the conductor having opened the door for him to pass, went out upon the rear platform, from which almost immediately he fell and was injured, is *held* not to sustain a finding by the jury that the conductor failed to exercise ordinary care in so opening the door,—there having been nothing in the passenger's appearance to indicate that special care should be exercised in his behalf.

2. No sudden jar or sway of the car after the door was opened and the passenger stepped out could be taken into account in

determining the conductor's negligence, in the absence of any showing that the roadbed just beyond was, to his knowledge, out of repair or uneven.

APPEAL from a judgment of the circuit court for Milwaukee county: W. B. QUINLAN, Judge. *Reversed.*

Action begun in the civil court of Milwaukee county to recover damages for personal injuries sustained while plaintiff was a passenger on one of defendant's cars. He boarded the car at about 6 o'clock in the afternoon on or about April 14, 1915, in company with two of his fellow workmen, and told the conductor that he wanted to get off at Lincoln avenue. Plaintiff was about sixty-nine years of age and had ridden on the car line ever since it was built and was familiar with the streets over which the car passed. After it had crossed Grant street, going south, Lincoln avenue being one block beyond, he got up from near the front end of the car where he had been sitting and with his pipe in his hand walked towards the rear of the car. The conductor, who was standing near the door, opened it for him and he stepped out on the platform, and just as he did so he claims he fell from the car to the street and was injured. He was picked up about 150 or 200 feet north of Lincoln avenue. The block between Grant street and Lincoln avenue is estimated to be about 300 feet in length. There was evidence that the car was running at a high rate of speed and was swaying from side to side at and just prior to the accident.

The jury by a special verdict found (1) that defendant's car was proceeding at a high rate of speed and was swaying from side to side just prior to the injury; (2) that the conductor failed to exercise ordinary care in opening the door for the plaintiff to permit him to step down upon the rear platform; (3) that such failure to exercise ordinary care on the part of the conductor was the proximate cause of the injury; (4) that no want of ordinary care on the part of the plaintiff proximately contributed to his injury; (5) that he

did not fail to exercise ordinary care in proceeding to the rear platform before the car came to a state of rest; and (6) that he sustained damages in the sum of $500. Judgment upon the special verdict was awarded plaintiff in the civil court, and upon appeal to the circuit court the judgment was affirmed, and the defendant appealed to this court.

For the appellant there was a brief by *Edgar L. Wood* of Milwaukee, attorney, and *A. L. Gardner* of Chicago, of counsel, and oral argument by *Mr. Wood.*

For the respondent there was a brief by *Morris Stern,* attorney, and *A. W. Richter,* of counsel, both of Milwaukee, and oral argument by *Mr. Richter.*

VINJE, J.　The special verdict covered the issues litigated upon the trial, and it will be observed that the only negligence found on the part of the defendant consisted in the conductor's opening the door to permit the plaintiff to pass out on the rear platform. It was the usual rear platform of a large city car, divided by upright and horizontal iron rods into one space for exit and one for entrance, with hand-holds at the sides of each besides the dividing rods. Its floor was from six to eight inches lower than the floor of the car. The question at issue is, Was the car running at such a high rate of speed or swaying so much that it was negligence on the part of the conductor to open the door for plaintiff and permit him to go out on the platform? It so happened that at the time of the accident there were only four passengers on the car—plaintiff and his two fellow workmen, Mlynarek and Odee, and one Stodola. The whereabouts of the motorman was unknown at the time of the trial, so we have only the testimony of the four passengers and of the conductor. Plaintiff testified that when he went down the aisle the car swayed so that he took hold of the corner handles of the seats to steady himself; that it was going at the same rate of speed it does when it has no stops to make and swayed such a sway as it makes when it goes fast—the usual sway

a car makes when it goes fast; that he had not seen the same sway before—it was shaking like the dickens, and the jar that threw him from the platform "was stronger—awfully stronger than those before." Mlynarek testified that the car was going at full speed; that the whole control was open and the car swayed; that it swayed five blocks back; that it ran as it usually does when it has no stops to make, and that the last sway was just as strong as those that went before. Odee testified that the car was running at full speed; that it gave a sway just as plaintiff stepped upon the platform, and that it gave the same sway as it always does when it goes at full speed. Stodola testified on behalf of the defendant that he noticed no unusual motion of the car before plaintiff fell off and that the car had begun to slow up before plaintiff fell and that he was picked up nearer Lincoln avenue than Grant street. Rankin, the conductor, testified that Lincoln avenue was a fire-department crossing and that the car always crossed it slowly; that the plaintiff was standing on the step below the platform when he fell and that the car was then running slowly. Such is the substance of the evidence. Considered most favorably for plaintiff it shows that the car was running at a high rate of speed and swaying from side to side. But there is nothing to indicate that an unusual or extraordinary condition obtained. Plaintiff's statement that it shook like the dickens may, for aught that appears in evidence, refer to the much stronger or awfully stronger jar he says that threw him from the car. When it is considered that the car was to come to a stop at Lincoln avenue to permit plaintiff to alight and that each of the plaintiff's witnesses, when asked to compare its actions with that of cars generally when they ran fast or with their usual speed in the middle of a block, testified that it acted as such cars act when so running, it is not likely that there was anything very unusual in its speed or swaying. There is not a syllable of evidence that the roadbed or car was out of repair. We have, therefore, the situation of an ordinary city street car running at a

high rate of speed in the middle of a block and swaying from side to side as such cars usually do when they run fast. Is it negligence under such circumstances for the carrier to permit an adult passenger in full possession of his faculties to go out upon the rear platform? Negligence is a failure to exercise that degree of care that the mass of mankind usually exercise in a like or similar situation. Now it is a matter of common knowledge that a great many of the adult street-car traveling public leave their seats and proceed to the platform preparatory to alighting before the car comes to a stop and often while it is in rapid motion. Frequently, when travel is congested, passengers ride upon the platform, not from choice, it may be, but from necessity. Some ride there from choice at times, especially those who wish to smoke. This shows that the mass of mankind do not consider the platform as necessarily an unsafe place to stand on a moving car. That conditions may exist making it a dangerous place cannot be denied. It is therefore generally a question of fact for the jury to determine whether or not a person voluntarily riding upon a street-car platform is guilty of contributory negligence. *Engen v. Chippewa Valley R., L. & P. Co.* 162 Wis. 515, 156 N. W. 460; *Bassett v. Milwaukee N. R. Co., post,* p. 152, 170 N. W. 944. It is true the jury must have considered the platform an unsafe place in this case or they could not have found the conductor negligent in permitting plaintiff to go upon it. But we are satisfied the evidence does not support the finding. In the summer time the doors are often open, allowing passengers free access to the platform at all times. And even if the doors are shut it is not an indication that passengers are not to go upon it. The conductor, no doubt as a matter of courtesy, opened the door for plaintiff; *non constat* plaintiff would not have opened it himself with the same result. He was headed for the platform and presumably would have reached it unaided. There was nothing in the speed or motion of the car that called upon the conductor to keep plaintiff inside. Any

Griebenow v. Chicago & M. E. R. Co. 169 Wis. 12.

sudden jar or sway in the car after the door was opened and plaintiff stepped out could not be taken into account in determining the conductor's negligence, in the absence of any showing that the roadbed just beyond was, to the knowledge of the conductor, out of repair or uneven. In the conduct of a street-car business it is practically necessary that the adult traveling public have free access to the platform under circumstances similar to the one at bar. Passengers must find seats upon entering while the car is in motion, and they generally prepare to alight before the car comes to a full stop. Any other method in conducting the business would render it too slow for the busy American public. Regard must always be had to the usual and reasonable method of conducting a business when applying the touchstone of negligence to any one engaged in it.

The fact that plaintiff was sixty-nine years old and had one useless and one good eye cannot take him out of the class of the average adult. The evidence showed that he had been riding over the line for years, that he was a hard-working man, in good health, and had worked for the same company for fifty-two years. There was evidently nothing in his appearance to make it incumbent upon the conductor to exercise any special care in his behalf. It is to be regretted that he fell and was hurt, but the cause therefor cannot be laid at the door of the defendant.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the action upon the merits.

KERWIN and ROSENBERRY, JJ., took no part.