BASSETT, Respondent, vs. MILWAUKEE NORTHERN RAILWAY COMPANY, Appellant.

*February 5—April 29, 1919.*

*Carriers: Interurban railway: Injury to passenger in collision: Contributory negligence: Riding in motorman's cab: Questions for jury: Evidence: Rule of company as to riding in cab: Damages: Future suffering: Inability to engage in pastimes: Instructions to jury: Reduction of award: Harmless error.*

1. A person cannot be held to have been guilty of contributory negligence as a matter of law unless the proof is so clear and decisive as to leave no room for unbiased and impartial minds to come to any other conclusion.

2. A passenger upon an interurban car who, because it was crowded beyond its seating capacity and because of the boisterous conduct of its occupants, rode in the motorman's cab, which was inclosed so that he was as secure from being thrown off as he would have been had he occupied a seat in the passenger compartment, cannot be held, as a matter of law, to have been guilty, in so riding, of contributory negligence which would preclude a recovery from the railway company for injuries sustained in a head-end collision caused by the negligence of the motorman. *Miller v. C., St. P., M. & O. R. Co.* 135 Wis. 247, distinguished.

3. A rule of the railway company excluding passengers from the cab was not admissible in evidence in such case unless its purpose was to promote the safety of passengers and plaintiff had knowledge of its existence.

4. A statement in the charge that plaintiff was entitled to be compensated for "such pain and suffering, both mental and physical, if any, as it is reasonably certain he will suffer in the

future," was not misleading or prejudicially erroneous because the words "as the result of his injury" were not added, where the jury was told, at least twice, that the damages which could be assessed must be such damages as resulted or would result from the injury. *Howard v. Beldenville L. Co.* 129 Wis. 98, explained.

5. Plaintiff in a personal injury action may be awarded damages because of diminished capacity for enjoying life or because of "deprivations of the pleasures of life;" and it was not error in such a case to instruct the jury to consider the extent, if any, to which the injury had affected a young man's "ability to engage in pastimes."

6. Where injuries to a young man twenty-one years old resulted in the loss of his left leg and the thumb of his left hand and a permanent scar on his face, included other injuries, not permanent, to his head and side, and greatly handicapped him if they did not wholly incapacitate him for the 'vocation for which he was best fitted, an award of $16,000 (reduced by the trial court from $20,000) is *held* not excessive.

7. Where the error, if any, in the admission of evidence bearing solely on the amount of damages, was more than offset by the trial court's reduction of the jury's award, the judgment will not be reversed for such error.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Affirmed.*

. This action was brought to recover damages sustained by plaintiff on April 6, 1916, while riding on one of defendant's interurban cars, which collided with another car at Thiensville, Wisconsin. Plaintiff recovered and defendant appealed.

For the appellant there was a brief by *Bottum, Bottum, Hudnall & Lecher* of Milwaukee, and oral argument by *George B. Hudnall.*

For the respondent there was a brief by *Thompson, Myers & Kearney,* attorneys, and *Thomas M. Kearney,* of counsel, all of Racine, and oral argument by *P. J. Myers.*

The following opinion was filed March 4, 1919:

OWEN, J. The defendant operates an electric interurban railway between Milwaukee and Sheboygan, and one of the stations on its line is Port Washington. Between Milwau-

kee and Port Washington is a station known as Thiensville. At the time of the accident plaintiff was attending a school of engineering at Milwaukee. The school included in its course of study an annual trip to Port Washington for the purpose of inspecting power plants at that city. The school chartered a car of the defendant on April 6, 1916, to take the students upon this annual trip. Between sixty and sixty-five students made the trip. The car had seating capacity for fifty-two passengers. There were three compartments in the car. In the rear was a regular passenger compartment, next forward was a smoking compartment, and ahead of the smoking compartment was a cab, or baggage-freight-express-motorman's compartment. This will be hereafter referred to as the cab. It was seven feet eight inches long and approximately eight feet wide, and contained no seats. There is a self-locking door between the smoking compartment and the cab which is usually kept locked. In the cab were hinged platforms located on each side of the compartment which, when not in use, fold up and fasten to the sides of the car. When folded down they are high enough so that a milk can can go underneath them, and they may be used for seats. It was a single-end car, the forward end being entirely closed and kept closed when running; the only passenger entrance to the car being at the rear. On the trip from Milwaukee to Port Washington the conductor opened the door between the smoking compartment and freight compartment because there were not seats enough for all the passengers. Some of the passengers occupied the cab, some standing up and some sitting on these benches on the trip from Milwaukee to Port Washington.

Among the plants "inspected" at Port Washington were certain breweries, at which the crowd was cordially and hospitably received and entertained. These plants also proved of interest to the conductor and motorman, who joined the "inspection party" while at these plants. When it came time to start on their return trip some difficulty was experienced

in getting the students aboard; at least one had to be carried into the car. The conductor could not say how many were intoxicated, but he thought three quarters of them had been drinking beer. Some of them had been drinking pretty heavily, and their general condition was boisterous. The plaintiff had imbibed rather temperately, and upon the return trip was not in harmony with the prevailing exuberant spirit, and, as the car was crowded beyond its seating capacity anyway, he sought the solitude of the motorman's cab, where he rode until reaching Thiensville, when the car came into collision with another car and he sustained the injuries which will hereafter be referred to. This cab is as securely inclosed as any part of the car. There was no more danger of being thrown from that part of the car than the regular passenger compartment.

The negligence of the motorman was conceded. The defendant resists liability solely on the ground that the plaintiff was guilty of negligence as a matter of law in occupying the cab, and upon the authority of cases in some jurisdictions which hold that a person who is injured while riding on an open platform of an ordinary passenger car on a steam railway, there being seating, or, in some cases, standing, room inside the car, is guilty of negligence as a matter of law. This rule, it is claimed, was adopted and applied by this court in the case of *Miller v. Chicago, St. P., M. & O. R. Co.* 135 Wis. 247, 115 N. W. 794. We think that a careful perusal of that case will disclose that it was there held as a fact, and not as a matter of law, that plaintiff's deceased was guilty of contributory negligence. However, we will not discuss that case further than to suggest that it is doubtful whether it sustains the principle contended for by the defendant. The situation of the plaintiff here and of the deceased there is comparable to the extent that both were passengers on a common carrier conveyance, but there the similarity ends. We can see no similarity whatever between the risk assumed by the plaintiff in this case and the deceased in that. There the

deceased was riding on an open platform of a swiftly mov-
·ing steam passenger train, in the nighttime, during or·imme-
diately after a severe rain storm, while here the plaintiff was
riding within the inclosure of the cab, as secure from being
thrown off as he would have been had he occupied a seat in
the passenger compartment.    The only extra risk to which
he subjected himself by standing in the motorman's cab that
could be suggested by appellant's counsel upon the argument
was that, in case of collision, the front part of the car was
necessarily the more dangerous.    This would be true, per-
haps, in case of a head-end collision, but in case of a rear-end
collision he was safer in the front end of the car than he
would have been in the passenger compartment.    Further-
more, compared with the number of passenger cars and
trains operated, collisions are very infrequent, and it can
hardly be said as a matter of law that a person of ordinary
intelligence and prudence boarding a passenger train or car
should anticipate injury from such cause.    If so, negligence
would result from riding on them at all, as, in case of a colli-
sion, there is no safe or secure place in the car.

The dangers to which plaintiff exposed himself were not
as great nor às obvious and apparent as were the dangers to
which plaintiff's deceased was exposed in *Engen v. Chippewa
Valley R., L. & P. Co.* 162 Wis. 515, 156 N. W. 460, where
it was held that the question of deceased's contributory negli-
gence in standing in the vestibule in the rear end of the car,
in a space twenty-four by twenty-seven inches, very close to
the edge of the platform next to the open door, where even a
moderate swaying of the car in turning the curve might cause
him to lose his balance and have a tendency to throw him off,
was a jury question.    Unless it can be said that plaintiff's
"contributory negligence is so clear and decisive as to leave
no room for unbiased and impartial minds to come to any
other conclusion, or, as it is sometimes said, so clear and con-
clusive as not to admit, reasonably, of any opposing infer-
ence in unbiased and unprejudiced minds, the proper infer-

ence to be drawn must be determined by the jury." *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573, and cases there cited. We cannot say as a matter of law that plaintiff's conduct in taking up his position in the motorman's cab was inconsistent with that degree of care which would have been exercised by the great mass of men under the same circumstances. Consequently there was no error in submitting this question to the jury.

Appellant complains because it was not permitted to prove a rule of the company excluding passengers from the cab. The proffered evidence was not accompanied by an offer to prove that plaintiff had knowledge of the rule, nor was it suggested that the rule was adopted by the company out of consideration for the safety of passengers. Unless the purpose of this rule was to promote the safety of passengers, and its existence brought to the knowledge of the plaintiff, it was not admissible. The exclusion of this evidence was not error.

The defendant excepted to the following extract from the court's charge to the jury:

"You are instructed that you will name such sum as you find from a preponderance of all the credible evidence in the case, to a reasonable certainty, will be required to fairly and reasonably compensate the plaintiff in money for such loss of earnings and such pain and suffering, both mental and physical, as you are satisfied is chargeable to the injury, and also for such loss of earnings, if any, and the impairment, if any, of capacity to earn a livelihood in the future, as it is reasonably certain will result from the injury, and such pain and suffering, both mental and physical, if any, as it is reasonably certain he will suffer in the future."

It is contended that that part of the charge reading, "and such pain and suffering, both mental and physical, if any, as it is reasonably certain he will suffer in the future," is erroneous, in that future pain and suffering, both mental and physical, is not limited to such as it is reasonably certain would result from the injury. We do not think the jury

could have misunderstood the import of the language used. In the sentence quoted the court uses the expression, "as you are satisfied is chargeable to the injury," and, again, the expression, "as it is reasonably certain will result from the injury." The assumption that from the language used by the court in this part of its charge the jury understood that they were to allow for mental and physical suffering that plaintiff might sustain in the future, from whatever cause arising, is to our minds unreasonable. The jury was told, at least twice, that the damages which could be assessed must be such damages as resulted or would result from the injury. We cannot adopt defendant's construction, nor agree that, from the language employed, the jury was given to understand that damages resulting from future pain and suffering, mental or physical, were not limited to those resulting from the injury.

Upon this question appellant relies upon *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48. In the opinion in that case it is said:

"This instruction was given to the jury on the subject of damages: 'You will . . . assess all such sums as you are satisfied from evidence will recompense him for all future suffering, both mental and physical.' That was prejudicially erroneous. The jury should have been limited in assessing damages for future suffering, mental and physical, to such loss, in that regard, as the evidence satisfied them would be reasonably certain to result from the injury."

That was a correct statement of the law, and so much of the charge as is quoted in the opinion was subject to the condemnation there pronounced. Appellant, however, has employed the deadly parallel and set out in his brief all of the charge in *Howard v. Beldenville L. Co., supra,* bearing upon the question, in which the language condemned in that case appears in one column and the charge of the court herein in another. In reading the full expression of the trial court upon the question in the *Beldenville Case* it must be agreed

that there is no material difference between it and the charge here under consideration. Considered as a whole, the charge in the *Beldenville Case* does not seem to merit condemnation, as the language not quoted in the opinion relieves it of the vice therein attributed to it. It is quite plain that the modifying parts of the charge were not impressed upon the attention of the court. A careful study of the charge in the *Beldenville Case* convinces us that had the charge as a whole been called to the attention of the court it would have been approved. It is perhaps proper to say that in that case numerous errors aside from the one mentioned prompted a reversal of the judgment, and that the result was not dependent upon that particular feature of the charge.

Appellant also complains because the court instructed the jury that in awarding plaintiff damages they were to take into consideration "the extent, if any, to which it [the injury] had affected his ability to engage in pastimes." It is conceded by appellant that plaintiff in a personal injury action may be awarded damages because of "diminished capacity for enjoying life," or, as approved in *Benson v. Superior Mfg. Co.* 147 Wis. 20, 132 N. W. 633, because of "deprivations of the pleasures of life." Having conceded that damages because of "diminished capacity for enjoying life" is proper, we do not appreciate the force of the contention that in awarding damages the jury may not take into consideration "the extent, if any, to which it [the injury] had affected his ability to engage in pastimes." "Diminished capacity for enjoying life" is more comprehensive than "ability to engage in pastimes." Plainly the former includes the latter and more. The defendant was not injured by the use of the language employed.

The jury fixed plaintiff's damages at $20,000, which was reduced by the court to $16,000. Appellant insists that the damages are still excessive. As a result of the accident plaintiff was rendered unconscious. His left leg was crushed. The thumb on his left hand was crushed. He sustained a

cut on his cheek, from the corner of his eye to the bottom of his nose, about an inch and a half; his scalp, to the extent of about an inch and a half square, was taken off, and skin to the extent of about an inch square was rubbed off his left side just above the hip. He recovered consciousness while he was lying on the floor in the depot. He was placed on a car and was hurried to a hospital in Milwaukee, where his leg was amputated four inches above the knee, and the thumb of his left hand was amputated at the proximal joint. Two or three stitches were taken in his cheek and a bandage placed on his head. The injuries to his head and side were not permanent in character. His permanent injuries consist of the loss of his left leg, the thumb of his left hand, and a permanent scar on his face. He suffered two shocks, one at the time of the accident and the other at the time of the operation. At the time of the operation he was so weak as a result of the accident that a complete anæsthetic could not be administered. He was in a semiconscious condition during the amputations. The amputation of the left leg was not an ideal one. The stump is conical, and is likely to give the plaintiff more or less trouble unless there is another amputation of the leg higher up. Plaintiff experiences pain at certain times when the weather changes. It feels as if the foot is there and asleep. It causes him inconvenience when he does considerable walking. At the time of the accident plaintiff was twenty-one years of age. His education was acquired in the public schools, where he completed the ninth grade, and at St. Norbert's College, at De Pere, Wisconsin, which he attended for about a year and a half. He had done considerable work around the electric light plant at Lena, installing transformers, lightning arresters, wiring houses, etc., for which work he was paid $60 a month, including his board and room. He became interested in electrical work, and in February, 1916, he went to Milwaukee, where he attended a school of engineering. He seems to have been a serious-minded and ambitious young man,

possessing inherent mechanical ability. His injuries have greatly handicapped him in the matter of following a mechanical vocation, if indeed he is not entirely unfitted and incapacitated for such work. The door of opportunity, in the vocation for which by nature he is best fitted, is practically closed to him. There is no definite standard by which damages resulting from such injuries may be measured. Necessarily they rest largely in the discretion of the jury. Our sense of justice is not shocked by the amount to which the court reduced the damages in this case. We cannot say they are excessive.

Appellant preserved exceptions to the introduction of some evidence which we shall not treat in detail for the reason that, in our view of the case, they have but an academic interest here. Such evidence had a bearing solely on the amount of damages. A good deal of it consisted of expert testimony concerning matters of more or less general knowledge, and its influence upon the verdict of the jury could not have been substantial. If any error occurred in its admission it was more than offset by the reduction of the damages from $20,000 to $16,000. *Bakula v. Schwab,* 167 Wis. 546, 168 N. W. 378. We cannot reverse the judgment for this error because, as above stated, we feel that substantial justice has been done and the rights of appellant were not prejudicially affected by the admission of the evidence. Sec. *3072m,* Stats.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on April 29, 1919.