Kornwolf, Respondent, vs. Milwaukee Electric Railway & Light Company, Appellant.

*November 16, 1921—February 7, 1922.*

*Street railways: Collision with automobile: Negligence: Care required of persons driving on tracks: Trial: Instructions.*

1. Unless it can be said that contributory negligence on the part of the plaintiff is so clear and decisive as to leave no room for unbiased and impartial minds to come to any other conclusion, the proper inferences to be drawn must be determined by the jury; but where plaintiff's own evidence conclusively shows contributory negligence on his part a nonsuit will be granted.
2. It was the duty of a driver of an automobile, upon entering street-car tracks and driving lengthwise thereon, to make observation at the time of entry and from time to time thereafter in order to discover an approaching car so as to enable him in time to give way to such car.
3. In an action to recover damages for injury to plaintiff's automobile, evidence showing that plaintiff was traveling lengthwise on a street railway track; that a belated street car, with dim headlights, was proceeding at an excessive rate of speed on its last trip to the car barn; that plaintiff stopped suddenly at the signal of a traffic officer and, looking backward, saw the approaching car and attempted to turn from the tracks; and that the street car, which had sounded no signal, came on with undiminished speed and struck the automobile, is *held* to make plaintiff's contributory negligence a jury question.
4. The refusal of the trial court to submit in the special verdict the question whether plaintiff exercised ordinary care in allowing his automobile to be on the track at the time and place of the collision was not error, every phase of contributory negligence having been covered by instructions with respect to another question submitted.

APPEAL from a judgment of the municipal court of Racine county: E. R. BURGESS, Judge. *Affirmed.*

The appeal is from a judgment entered on December 28, 1920, in favor of the plaintiff and against the defendant for damages and costs, as the result of injuries to plaintiff's automobile.

At the time in question there were located on Douglas avenue, a public street in the city of Racine running north

and south, two sets of tracks used by the defendant in operating its interurban cars between the city of Milwaukee and the city of Kenosha.   Going from north to south said Douglas avenue is intersected by the following streets, namely: Kewaunee, Albert, Hubbard, Hamilton, Jackson, and Prospect.   The distance between the south line of Kewaunee street at its intersection with Douglas avenue and the nearest crossing of Hamilton street is 1,540 feet; the distance between the south crossing of Hamilton street and the nearest crossing of Jackson street is 245 feet; the distance between the south crossing of Jackson street and the nearest crossing of Prospect street is 156 feet, making the total distance between Hamilton street and Prospect street at their intersection with Douglas avenue 441 feet.   Prospect and Jackson streets at the intersection are each forty feet wide; Hamilton street is sixty feet wide; and Hubbard street is sixty-five feet wide.   Douglas avenue between Hamilton street and Prospect street is perfectly straight. There is a marked curve on Douglas avenue at the intersection of Hamilton street.

On the 31st day of May, 1920, the plaintiff, together with two other passengers, was returning from Milwaukee to his home in the city of Racine, at 1 o'clock at night, going south on Douglas avenue, in a Chevrolet sedan automobile, and when he reached the intersection of Hamilton street it is claimed by him that he looked north for the approach of an interurban car but failed to observe one, and then proceeded south at the rate of about thirteen miles an hour on Douglas avenue, with his automobile traveling partly within and partly without the west track of the defendant company.   To the west of said west track there was sufficient roadway upon which plaintiff could have traveled safely without being endangered by an approaching car coming from the north.   As he passed the intersection of Jackson street with Douglas avenue he was hailed by a police officer, who called out to him to put on his lights.   The plaintiff did

not understand what the officer said, and thinking that possibly some one had been injured who required the use of an automobile he stopped his car a distance of about fifty feet south of the north crossing of Prospect street. The last car going south, under the schedule of the defendant, was due at the defendant's barns in the city of Racine at 12:40 a. m. Immediately after stopping his car the plaintiff looked back, and then for the first time, a distance of about forty feet to the north of him, saw the defendant's interurban car approaching at the rate of between twenty-five and thirty-five miles an hour. The plaintiff immediately endeavored to remove his car from the tracks, but before being able to accomplish his purpose the collision between the interurban car and plaintiff's automobile was precipitated, resulting in considerable damage to plaintiff's car.

The collision took place on a clear, moonlit night, and the plaintiff testified that without the aid of any artificial lights he could see an object ahead of him quite clearly at a distance of about 200 feet. From computations made, taking into consideration the speed of plaintiff's car when it left Hamilton street, and the distance between Hamilton street and the point of collision, and the rate of speed at which the defendant's car was running, the defendant's car at the time plaintiff crossed the Hamilton-street crossing of Douglas avenue was about 400 or more feet north of the crossing. At the time of the collision there was in force in the city of Racine an ordinance limiting the speed of street cars to twelve miles an hour and making a violation of such ordinance a misdemeanor. Defendant's car had on a dimmed headlight, and plaintiff's car had on its dimmers and the tail light was burning. No gong or other signal was sounded before the collision.

The case was submitted to the jury upon a special verdict, in which the jury answered (1) that the motorman operating defendant's car did not use ordinary care in handling and running the car at the time he was approaching and struck

plaintiff's automobile; (2) that such want of ordinary care was the proximate cause of the damage to plaintiff's automobile; (3) that no want of ordinary care on plaintiff's part proximately contributed to cause the damage in question.

At the close of plaintiff's evidence defendant moved for a nonsuit, which motion was denied by the court. After verdict the defendant moved the court to change the answer of the jury to question number 3 of the special verdict from "No" to "Yes," and for judgment in favor of the defendant and against the plaintiff upon the verdict as so changed; also for judgment in its favor notwithstanding the verdict, and, in the event of a refusal of the court to grant defendant's motions aforesaid, that a new trial be awarded, for reasons which will subsequently be considered.

For the appellant there was a brief by *Simmons & Walker*, and oral argument by *Charles F. Wratten* and *John B. Simmons,* all of Racine.

For the respondent there was a brief by *Whaley & Erikson* of Racine, and oral argument by *Vilas H. Whaley*.

The following opinion was filed December 13, 1921:

DOERFLER, J.   Defendant first assigns as error the refusal of the court to grant his motion for a nonsuit.

Unless it can be said that the contributory negligence of the plaintiff was so clear and decisive as to leave no room for unbiased and impartial minds to come to any other conclusion, the proper inference to be drawn must be determined by the jury. *Bassett v. M. N. R. Co.* 169 Wis. 152, 170 N. W. 944; *Dahinden v. Milwaukee E. R. & L. Co.* 169 Wis. 1, 171 N. W. 669.

It has also, however, been held: "But, where the plaintiff's own evidence conclusively shows contributory negligence on his part, a nonsuit will be granted." *Rhyner v. Menasha,* 97 Wis. 523, 526, 73 N. W. 41; *Cawley v. La Crosse City R. Co.* 101 Wis. 145, 154, 77 N. W. 179.

It was conceded on the trial that there was no necessity for plaintiff driving partially on the tracks, and that there was sufficient space to the west of the tracks and a good roadbed where he could have driven in perfect safety. It was also the duty of the plaintiff, before entering upon the tracks, to look and listen in order to ascertain the approach of a car. Defendant's counsel cited a number of cases applicable to persons driving on the tracks of a steam railroad. Under the decisions of this court a marked distinction has been drawn between cases based on facts similar to those involved in the instant case, where the person travels along and in the street-car tracks, and cases involving the driving onto or crossing of steam railroad tracks. The late Mr. Chief Justice WINSLOW, therefore, in the case of *Kowalkowski v. M. N. R. Co.* 157 Wis. 473, 476, 146 N. W. 801, in the opinion of the court says:

"When, however, the question arises as to the duty of a person traveling upon the street lengthwise of the street railway track, it is plain that there can be no very close analogy between steam railroads operating cars upon their own right of way and street railroads operating cars upon the public street. The difference of situation necessarily creates different standards of conduct. The traveler has no right to travel upon the inclosed right of way, but he has a right to travel upon that part of the highway covered by the street railway track when it is not required for the passage of street cars in the performance of that duty which street-car companies assume to the public."

In the same opinion it is also held:

"The question of ordinary care is generally a relative question, depending upon the facts surrounding each case. For this reason the citation of adjudicated cases is not very helpful, as there is always a difference in the facts."

It was the duty of the plaintiff, upon entering the street-car tracks and in driving lengthwise thereon, not only to make his observation at the time of such entry, but to make frequent observations from time to time in order to dis-

cover an approaching car so as to enable him in time to give way to such car.   In the *Kowalkowski Case, supra,* the plaintiff was driving slowly lengthwise along the street-railway tracks with a horse and vehicle, and looked backward within a distance of about each half of a block.   The street car was running at an excessive rate of speed and bore at the front thereof only a sixteen candle-power incandescent light, with the reflector on the forward part of the roof.   In the opinion in that case it is said:

"It may well be that this comparatively feeble light in the position in which it was would not necessarily attract the attention of a man taking occasional glances backward, or if seen would not be identified as the light of an approaching car."

The testimony in the instant case shows that the defendant's car was running at a rate of speed of from twenty-five to thirty-five miles an hour; that no signal or gong was sounded heralding its approach; and that the speed of the car was not perceptibly diminished before the collision, and that such car bore down upon plaintiff's automobile while running at full speed.   Plaintiff did not look backward because he saw the approaching lights of defendant's car, but because he was hailed by the officer at the intersection of Douglas avenue and Jackson street, and in looking around he saw the light of defendant's car and the car approaching at a distance of about forty feet, too late for him to clear the tracks.   While the night in question was apparently a clear, moonlit night, it must be assumed that the reflection of the headlight on defendant's car would not be as effective to call attention to the approach of the car under those circumstances as it would on a dark night.   It was also a conceded fact that defendant's car was belated, and that at the time of the collision it was overdue at the car barn a period of twenty minutes.   Had the plaintiff not been hailed by the officer as detailed by the facts as herein stated, his car while in motion could have, within the period

of a second or two, readily cleared the tracks and thus have avoided the collision; however, it can well be assumed that being hailed at that time of the night by the officer, at the intersection of Jackson street, the plaintiff's first impulse naturally was to stop his car immediately, particularly in view of the thought that he expressed, that some one might have suffered injury who needed immediate attention.

Therefore, in view of the fact that defendant's car was the last car to travel south on the tracks that evening and that it was approximately one-half hour late; that plaintiff was prompted to stop his car by being hailed by the officer as detailed, and in consideration of the excessive speed at which defendant's car was running prior to the collision, and that no signal of its approach had been sounded and no effort made to diminish its speed, we are of the opinion that the question of plaintiff's contributory negligence, under all the facts and circumstances in the case, was one properly to be submitted to the jury.

· The fact that the motorman on defendant's car testified that he did not see plaintiff's automobile until the time of the collision is very persuasive in showing that the headlights on the car were very dim, for it is established by the evidence that the tail light on plaintiff's car was burning at the time of the collision.

The fifth assignment of error, based upon the refusal of the court to change the answer of the jury to the third question of the special verdict from "No" to "Yes" and to order judgment for the defendant upon the verdict as so changed; and the sixth assignment of error, based upon the refusal of the court to order judgment in favor of the defendant notwithstanding the verdict; and the seventh assignment of error, based upon the refusal of the court to set aside the verdict and to grant a new trial, are substantially covered in this opinion with reference to the first assignment of error and will therefore receive no further comment herein.

Defendant's counsel requested the submission, as a ques-

Kornwolf v. Milwaukee E. R. & L. Co. 176 Wis. 160.

tion of the special verdict, whether the plaintiff exercised ordinary care in allowing his automobile to be on the street-car track at the time and place of the collision, and the refusal of the court to submit such question constitutes defendant's second assignment of error.

In *Fandek v. Barnett & Record Co.* 161 Wis. 55, 61, 150 N. W. 537, in an opinion rendered by Mr. Justice VINJE, this language is used:

"The correct practice, however, is to submit only one question on the subject of plaintiff's contributory negligence, but the submission of two partly covering the field and one wholly so, where the answers are consistent, cannot be held prejudicial error."

In connection with question number 3 of the special verdict the court fully covered every phase of contributory negligence involved in this case, and such instructions are in full accord with the opinion in the *Kowalkowski Case* (157 Wis. 473, 146 N. W. 801), and in fact were taken almost bodily from the opinion in that case. Under the circumstances we can see no prejudicial error in refusing to submit the question proposed.

Defendant's counsel also assign, as their third and fourth assignments of error, the refusal of the court to instruct the jury as requested that ordinary care requires a person about to drive onto a street-car track to look and listen at the last opportunity before passing the line between safety and peril; and also in refusing to instruct the jury as requested that a street car is entitled to precedence in the use of the part of the street occupied by its tracks; that other persons using that part of the street should not unnecessarily obstruct the passage of cars, but should keep diligent lookout for cars approaching from either direction and yield the track to them; and that the motorman is entitled to presume they will do so unless the contrary does or should become apparent.

The court in its instructions pertaining to the third ques-

tion of the special verdict instructed the jury that it is the manifest duty of the traveler who chooses to travel along that portion of the street occupied by the street railway tracks to give way in due season to an approaching car, and that it followed necessarily that it is his duty to exercise ordinary care not only to discover when a car is approaching, but to turn off from the track in time to prevent a collision. The court also instructed the jury that from the very nature of the situation a citizen must defer to the street car in using the part of the street necessary in the operation of a street railroad; that a street car necessarily acquires great momentum and cannot be momentarily stopped and cannot turn out. These instructions and others given by the court substantially cover the requested instructions by defendant's counsel, and we therefore hold that no prejudicial error was committed in refusing to give the instructions requested.

From the foregoing the judgment of the lower court must be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 7, 1922.