97 319
e99 245

97 319
f105 316

ABBIE D. RAMSDELL, Admx., *vs.* JAMES B. GRADY.

Washington. Opinion February 13, 1903.

*Physician. Negligence. Damages.*

1. A physician who fails to exercise reasonable care and diligence in the treatment of his patient is liable for malpractice, and in finding the defendant thus liable in this case, it is not clear to the court that the jury erred.

2. The defendant undertook the case of the plaintiff's intestate on Monday. The patient died on the following Saturday. The only damages of any amount which the deceased sustained were those resulting from mental and bodily pain; in an action by his administratrix, it is *held*, that under the evidence in this case, a verdict of $3,000 is unmistakably too large.

3. Only such damages can be allowed as the deceased sustained in his lifetime. Nothing can be allowed for his loss of life, nor for what he might have earned had he lived longer.

4. Damages in such a case can include only such loss, expense and suffering as was due to the defendant's default in excess of what they would have been had the case been properly diagnosed and treated.

On motion. Motion overruled.

Action on the case brought to recover damages on account of the negligence of the defendant, a physician, in the treatment of the plaintiff's intestate, Henry F. Ramsdell, during his last sickness, which commenced on Saturday, November 24, 1900, and terminated fatally on Saturday, December 1, A. D. 1900.

The plaintiff's contention was that the disease from which Mr. Ramsdell suffered and died was diphtheria; that it was a typical case, having all the characteristic symptoms; that it was not a disease

difficult to diagnose; that it should have been discovered by physicians of ordinarily good standing as to their qualifications, and who, in the care and treatment of the case exercise that diligence, care and attention that the seriousness of such a case called for and required; that the defendant, as a physician, treated plaintiff's intestate, Mr. Ramsdell, from Monday, November 26, until the latter part of the following Friday afternoon, and although he saw Mr. Ramsdell seven times during the five days that he treated him, did not discover the presence of diphtheria, and consequently did not treat him for diphtheria; that on Friday night, after having treated him for five days, he sent him from Eastport to the Eastern Maine General Hospital in Bangor, a distance of 135 or 140 miles, in the night time in the winter, unattended by a physician or nurse, for the purpose of having a surgical operation performed upon his throat; that on account of his failure to discover the disease from which he was suffering and to administer the proper treatment for it, and on account of sending him from Eastport to Bangor in such condition, that he not only suffered great pain, but that he suffered a great deal more than he otherwise would, had the defendant discovered the presence of diphtheria when he should have discovered it, and administered the proper and well recognized and universally adopted remedy for that disease.

The case was tried to a jury who returned a verdict for the plaintiff of three thousand dollars.

*F. J. Martin and H. M. Cook; G. M. Hanson and A. St. Clair,* for plaintiff.

*W. R. Pattangall; L. D. Lamond; G. A. Curran,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, SPEAR, JJ.

SAVAGE, J. Case against physician for negligently and unskilfully diagnosing the disease with which the plaintiff's intestate was ill, and of which he died, and for negligent and unskilful treatment of the same. After a verdict for the plaintiff the case comes here on motion for a new trial. The grounds relied upon are that the ver-

dict is contrary to the evidence and that the damages awarded are excessive.

I.   The plaintiff contends that her intestate was ill with diphtheria; that the defendant was called as attending physician, that he should by the exercise of reasonable skill and care have diagnosed the case as diphtheritic, but that he negligently and unskilfully failed to do so, or to administer proper treatment, in consequence of which the patient became increasingly ill and died five days after the defendant was first called.   It appears that the defendant was first called on Monday and treated the case during the week until Friday afternoon, when the patient, upon his recommendation, was taken from his home in East-port to a hospital in Bangor, where he died Saturday afternoon.   It is claimed that even the removal of the patient was improper under the circumstances.

The defendant contends that the disease was not diphtheria, or if it was, that it did not present any apparent symptoms of diph-theria that if it was diphtheritic at all, it was laryngeal, and of a kind the distinctive symptoms of which might not be discoverable by the diagnosis of an ordinarily skilful and careful physician and the defendant contends that in all respects he exercised reasonable care and skill.

No questions of law are in dispute.   The liability of a physician for malpractice is based upon his implied agreement with his patient that he possesses the ordinary skill of a physician under like condi-tions, that he will use his best skill in determining the nature of the malady and the best mode of treatment, and that he will exercise reasonable care and diligence in the treatment.   *Patten* v. *Wiggin*, 51 Maine, 594, 81 Am. Dec. 593; *Cayford* v. *Wilbur*, 86 Maine 414.   The facts are seriously in dispute.   There is much evidence upon both sides.   An analysis of it here would not be useful.   It is sufficient to say that it has not been made to appear that the jury manifestly erred concerning the defendant's liability.   The verdict in that respect must stand.

II.   But the amount of damages awarded is, we think, unmis-takably too large.   The counsel do not disagree as to the rule of

damages. Only such damages can be allowed as the deceased sustained in his lifetime. Nothing can be allowed for his loss of life nor for what he might have earned had he lived longer. The administratrix is entitled to recover, for the benefit of the estate, such damages as the deceased suffered up to the last moment of his life, and no longer. These principles are regarded as well settled, notwithstanding some dicta apparently to the contrary in *Welch* v. *Maine Central R. R. Co.*, 86 Maine, 552. See *Bancroft* v. *Boston & Worcester R. R. Corp.*, 11 Allen, 34; *Kennedy* v. *Standard Sugar Refinery*, 125 Mass. 90; *Clark* v. *Manchester*, 62 N. H. 577. This rule may include loss of earnings, though in this case that was inconsiderable. It does include expense to which the deceased was put, or for which he became liable, on account of the wrong of the defendant. It also includes mental and bodily suffering up to the moment of death. It only includes, however, such injury, expense and suffering as was due to the defendant's default in excess of what they would have been had the case been properly diagnosed and treated.

It is very difficult for the non-professional mind to grasp and apply the distinction between a loss which ends at death, and a loss which ensues in consequence of death, or to exclude loss of life as an element of damages, no matter how well it may have been instructed. It is believed that the jury in this case erred in this respect. The only damages of any amount which the deceased sustained were those resulting from mental and bodily pain, and for these five hundred dollars a day were awarded. It is conceded that there is no precise way by which the pecuniary compensation for pain can be estimated, and that latitude in judgment must be allowed to the tribunal which determines it. Yet it is the duty of the court to see that what should be regarded as the ultimate bounds are not greatly overstepped.

The deceased was ill and under the defendant's care from Monday morning until Friday afternoon. He died the next day. He was unable to lie down or to sleep much. He found difficulty in breathing, and occasionally had strangling spells. He was very weak. He could eat or drink only with great difficulty. There is a strong

probability that at times he was in apprehension of death, though the evidence bearing upon this point is chiefly inferential. These are some of the chief features presented in the evidence. We need not particularize further. Taking into account all of the evidence, viewed as liberally in support of the verdict as it may properly be, we think the verdict should not be allowed to stand for more than fifteen hundred dollars.

> *If, within thirty days after rescript is filed, the plaintiff remits all of the verdict in excess of $1500, motion overruled; otherwise motion sustained, new trial granted.*