EDWARD O'BRIEN vs. J. G. WHITE AND COMPANY, Incorporated.

Cumberland.    Opinion April 2, 1909.

*Evidence.    Master and Servant.    Negligence.    Excessive Damages.*

If a fact is relevant and properly admissible for one purpose it cannot be excluded on the ground that when in evidence it may be used to effect another purpose for which it would not have been admissible.

Although evidence properly admissible for one purpose may be so perverted in its use as to effect a different and illegitimate purpose, yet it cannot on that account be wholly rejected. The correction of its abuse lies in such explanation as the presiding Justice may feel required to give to the jury concerning it.

If the act of a third party concurs with the negligence of a defendant in causing the injury complained of, such concurring act does not relieve the defendant from liability if such act ought to have been foreseen or anticipated, and especially when the concurring act could not have caused the injuries except for the defendant's negligence.

Where the defendant was constructing a line of poles and wires for the transmission of electric current from a generating station and the plaintiff, a servant in the employ of the defendant, was engaged in working on the wires, and a current of electricity unexpectedly passed over the wires and the plaintiff was injured, *held* that the standard of care required of the defendant was such as an ordinarily reasonable and prudent person would have exercised under like circumstances and that it was for the jury to fix the measure of that standard.

The plaintiff while in the employ of the defendant received serious and severe personal injuries caused by the alleged negligence of the defendant and recovered a verdict for $23,071.66. *Held :* That the finding of the jury on the question of the defendant's liability should not be disturbed but that the damages awarded were excessive and for that reason a new trial must be granted unless the plaintiff remits all the verdict in excess of $17,500.

On motion and exceptions by defendant.    Exceptions overruled. Motion sustained unless remittitur be made.

Action on the case to recover damages for personal injuries sustained by the plaintiff while in the employ of the defendant corporation, and caused by the alleged negligence of the defendant corporation. Plea, the general issue. Tried at the October term, 1908,

Supreme Judicial Court, Cumberland County.   Verdict for plaintiff for $23,071.66.   The defendant excepted to certain rulings during the trial and also filed a general motion for a new trial.

The case is stated in the opinion.

*William Lyons*, for plaintiff.

*Libby, Robinson & Ives*, for defendant.

SITTING:  EMERY, C. J., WHITEHOUSE, CORNISH, KING, BIRD, JJ.

KING, J.   Action to recover damages for personal injuries.   The verdict was for the plaintiff, and the case is before this court on defendant's exceptions and motion.

On the twenty-eighth day of August, 1907, the plaintiff received personal injuries while in the employ of the defendant, a corporation engaged at the time in constructing a line of poles and wires, for the transmission of electric current from a generating station, which the defendant had constructed, at West Buxton, Maine, through certain other towns, and terminating in a switchboard in the power station of the Consolidated Electric Light Company in Portland, known as the Plum Street Station.   Before reaching that station the line of wires passed through a transformer house, which the defendant also constructed, located about two and one-half miles westerly from Portland, the purpose of which was to "step down" the voltage of the incoming current at a ratio "of ten down to one." There were two sets of switches in the transformer house by the use of either of which the transmission wires could be disconnected so that no current could pass either way between the West Buxton and Plum Street stations.

There was another generating plant situated at North Gorham, called the Great Falls Station, from which electric current was being transmitted into the Plum Street Station and from there distributed. The switchboards of these two lines, in the Plum Street Station, were about forty feet apart.   There was also an auxiliary steam plant in the Plum Street Station by which electricity was generated.

Early in August the West Buxton line had been completed in part, so that the wires on one side of the poles could be used, and

by an arrangement between the defendant and the Consolidated Company those wires were used, during the night time only, beginning with August ninth, for the transmission of electricity from the West Buxton Station into the Plum Street Station, where it was distributed.

The defendant placed a lineman at the West Buxton Station whose duty there was to disconnect the transmission line outside the power-house in the morning, when informed by telephone that the line crew were ready for work, and notify the foreman of the crew that the disconnection was made. He remained there during the day to guard the line and reconnect it at night.

On the morning of the day of the accident the men were notified by the foreman that the line was clear for them to work. Shortly before two o'clock of that day the plaintiff, as one of the defendant's line crew, was ordered up a pole by the foreman to unfasten the wires so that another pole could be uprighted, and while sitting on the crossarm, with a wire in each hand, and his feet resting on a third, waiting for the word to refasten the wires, a current of electricity passed over the wires causing his injuries. The place of the accident was between the West Buxton Station and the transformer house.

It is not absolutely certain from whence that current came. The evidence is undisputed, however, that the transmission line at the West Buxton Station was then disconnected and the machinery there not in operation. Undoubtedly the current came from the Plum Street Station, and in all probability through that station from the Great Falls line, for the fact is shown that some time prior to the accident a "tie" or connection had been made in the Plum Street Station between the switchboards of these two lines, over which the current from the Great Falls line would pass to the West Buxton board and thence out on that line, if the switch there should be closed for an instant. It appeared that some men of the Consolidated Company were directed to do some work about the West Buxton switchboard just prior to the accident. It was also in evidence that a short circuit was recorded at the Great Falls Station at about two o'clock of that day. A theory of the defense, there-

fore, was that those men in working about the West Buxton switchboard, in some way closed the switch there for an instant; but such does not appear as a fact in evidence.

The plaintiff's action was based on the alleged negligence of the defendant in not providing a reasonably safe place for him to work. He claimed that it failed to exercise reasonable care, in view of the dangerous situation, to protect him from the peril of an electric current passing on to the wires on which he was directed to work, and especially at the Plum Street Station.

EXCEPTIONS. Among other precautions which the plaintiff claimed the defendant should have taken was that of opening the switches in the transformer house, thereby entirely disconnecting the line, on which the plaintiff was working, from the Plum Street Station.

The exceptions are to the admission against objection of the testimony of Luke A. McCoy, defendant's line foreman, recalled by the plaintiff, that on the day after the accident he sent a man "To pull the switches in the transformer house," and kept him there "Until I got through on the line . . . . The 5th. day of September." This testimony was clearly inadmissible for the purpose of showing an act of precaution done after the accident. But it was only offered and admitted for another purpose. The defendant had introduced the deposition of Stewart C. Coey, who installed the electric apparatus in the transformer house for the defendant, in which the deponent said that he finished work there "About the 10th day of August," and that after he left, the Consolidated Company took charge of the transformer house. To contradict this testimony and show that the defendant had charge of the transformer house until after August 28th the testimony of McCoy was offered and admitted.

If a fact is relevant and properly admissible for one purpose it cannot be excluded on the ground that when in evidence it may be used to effect another purpose for which it would not have been admissible. Wigmore on Ev., Vol. I, Sec. 13. *State* v. *Farmer*, 84 Maine, 440.

In the latter case it is said: "That evidence properly admissible for one purpose may be so perverted in its use as to effect a

different and illegitimate purpose, is not altogether preventable. But such evidence cannot on that account be wholly rejected.

"The correction of its abuse lies in such explanation as the presiding judge may feel required to give to the jury concerning it."

At the time this testimony was admitted the presiding Justice stated : "I will say now to the jury that this testimony is admitted not for the purpose of showing the condition of this defendant after August 28th when the plaintiff was injured but simply to contradict the witness Coey whose deposition has been read to you, if in your judgment it does contradict it . . . and they should consider it for that purpose and for no other.

It is the opinion of the court that the testimony of McCoy was admissible for the purpose for which it was offered, and that no error was committed in so receiving it, especially in view of the caution given to the jury that they should consider it for that purpose and for no other. The exceptions, therefore, must be over-ruled.

MOTION. The issue as to the defendant's negligence was reduced to the question whether or not it exercised reasonable care and precautions to protect the line on which the plaintiff was ordered to work from a current of electricity coming from the Plum Street Station. That the defendant did not take any special care or precautions in this regard is unquestioned. Its general superintendent, Mr. Nichols, stated that no one was placed in the Plum Street Station, or at the transformer house, to look after the switches, and that there was no necessity of any one looking after that end of the line, because there was no "power on it." The defendant's contention was, as stated in the brief of its learned counsel, "that under all the circumstances existing before the accident there was no reasonable ground to apprehend that current would come from the Portland end of the line, and therefore the above precaution did not appear necessary in the exercise of reasonable care."

It claimed to have no knowledge that any connection had been made in the Plum Street Station between its switchboard and that of the Great Falls line, and that, from its arrangement with the Consolidated Company whereby the latter was to use the wires by night

only, because by day they were to be worked upon by the linemen, it was justified in assuming that the end of its line in the Plum Street Station would be a "dead end" and that no current could come from there.

On the other hand the plaintiff contended that the defendant must have known that its wires were necessarily connected at the Plum Street Station in some way with other wires, else the current transmitted from West Buxton at night could not have been distributed, and that, in view of all the circumstances and the perilous situation in which the plaintiff was placed, should a current of electricity pass over the wires, it was the defendant's reasonable duty to have disconnected the wires at the transformer house by throwing out the switches there, or to have guarded its switchboard in the Plum Street Station while its men were on the line.

These contentions of the parties were clearly and distinctly presented to the jury with appropriate instructions. The standard of care required of the defendant was such care as an ordinarily reasonable and prudent person would have exercised under like circumstances. It was for the jury to fix the measure of that standard. They were authorized, we think, to regard the circumstances dangerous, and to fix the measure of care required correspondingly high.

A current of electricity is silent, swift and dangerous, and the defendant should have regarded the risk of serious and perhaps fatal injuries to the plaintiff if such a current passed over those wires. It was its duty carefully to observe the situation and consider all conditions which would lead to the determination of what should be done to keep those wires "dead" while the plaintiff was at work upon them.

If the defendant had examined its switchboard in the Plum Street Station it would have learned that a connection had been made there whereby a live current of electricity was flowing directly onto that switchboard from the Great Falls wires, and that the only thing which prevented that deadly current from passing over the wires whereon the plaintiff was put at work was a switch which, according to the evidence, could easily be thrown out of place by a

slight force, either carelessly or accidentally applied to it by other workmen in that station. The jury may have determined, and we think properly, that reasonable care required the defendant to make such examination. Had the defendant actually known of this condition and failed to have guarded that switch, or disconnected its wires at the transformer house, it would not contend, we assume, that such failure would not constitute negligence. But if the exercise of reasonable care under the circumstances required the defendant to make such an examination, from which it would have learned of the existing conditions, and it did not do it, then its failure to guard the switch, or disconnect the wires, did in like manner constitute negligence, for the law charges it with such knowledge of the existing conditions as by the exercise of reasonable care it would have actually acquired.

Whether or not the defendant did exercise reasonable care to protect the plaintiff under the circumstances was a question of fact for the jury. They decided that it did not, and after a careful review and consideration of the evidence the court is of opinion that their decision should not be disturbed.

It is further contended that if the defendant was negligent as claimed by the plaintiff, nevertheless, it is not liable because its negligence was not the proximate cause of the accident, but that an independent act—the throwing in of the switch at the Plum Street Station by the men of the Consolidated Company while at work about the switchboard—intervened, and became the proximate cause. We think this contention should not prevail. Assuming it to be a fact that the switch was thus thrown in, by which act the current was let on to the defendant's wires, that would be only a concurring act with the defendant's negligence in causing the injuries complained of, for without the omission of the defendant to disconnect the wires and keep them "dead" the throwing in of the switch could not have caused the accident.

If the act of a third party concurs with the negligence of the defendant in causing the injury complained of, such concurring act does not relieve the defendant from liability if such act ought to have been foreseen or anticipated, and especially when the concur-

ring act could not have caused the injuries except for the defendant's negligence. *Lake* v. *Milliken*, 62 Maine, 240 ; *Lane* v. *Atlantic Works*, 111 Mass. 136, 139 ; I Shearman and Redfield on Negligence, (5th Ed.) sec. 39 ; *Harrison* v. *Kansas City Electric Light Co.*, (Mo.) 93 S. W. 951 ; Am. & Eng. Ency., 2d Ed. page 491, and cases cited.

The question whether the defendant should have foreseen the danger of the switch being thrown in accidentally or otherwise was clearly submitted to the jury by the presiding Justice, in the language of the defendant's special request, and the jury found that such danger should have been foreseen.

We think this finding of the jury should not be interfered with.

If the defendant knew, or by the exercise of reasonable care should have known, that the electric current from the Great Falls line was on its switchboard, and that only an easily moved switch kept that current from the plaintiff, then it was not manifestly unreasonable for the jury to decide that the danger of that switch being thrown out of place in some way should have been foreseen.

The defendant therefore is not relieved from liability by the fact that the throwing in of the switch by some third person concurred with its negligence in causing the plaintiff's injury, because that concurring act should have been foreseen by it.

The motion to have the verdict set aside and a new trial granted was also based upon the ground that the damages awarded ($23,071.66) were excessive. The plaintiff's injuries were severe, and his sufferings extreme. As the result he is, and must continue, physically disabled to a large extent. His right leg was amputated above the knee and the ends of the ring and middle fingers of his left hand were taken off at the first joints. He is further somewhat disabled from the results of his severe burns and nervous shock.

But he is not helpless, nor totally disabled for labor, for there are many occupations which can be pursued by persons having lost one leg and the partial use of the left hand.

Without attempting here to discover and point out what may have been the causes therefor, the court is constrained to reach the conclusion that the damages awarded by the jury are unmistakably

excessive.    The amount awarded will purchase for the plaintiff an annuity of more than $1100, a sum in excess of his total yearly earnings at the time of the accident.    We think the jury may have failed to appreciate that the amount to be awarded the plaintiff for the diminution in his future earnings should be a sum equal to the present worth of such diminution, and not its aggregate for his expectancy of life.

The evidence of the extreme suffering which the plaintiff endured, following the accident and before his leg and fingers were amputated, could not have failed to arouse the sympathy of the jury, and their judgment as to the amount of money to be awarded him for that suffering may have been unduly affected by that sympathy.    In *Ramsdell* v. *Grady*, 97 Maine, page 322, this court said :    "It is conceded that there is no precise way by which the pecuniary compensation for pain can be estimated, and that latitude in judgment must be allowed to the tribunal which determines it.    Yet it is the duty of the court to see that what should be regarded as the ultimate bounds are not greatly overstepped."

It is the conclusion of the court that this verdict should not be allowed to stand for more than seventeen thousand five hundred dollars, ($17,500), and unless the plaintiff will remit all over that sum a new trial should be granted, because the damages are excessive. Accordingly the entry will be,

> *Exceptions overruled.*
>
> *Motion overruled, if within thirty days after rescript is filed the plaintiff remits all of the verdict in excess of $17,500; otherwise, motion sustained, new trial granted.*