### DUNTON v. HINES. Director General of Railroads.

(District Court, D. Maine. September 15, 1920.)

No. 577.

1. **Evidence** ☞589—Testimony of plaintiff of some value, although unconscious after injury.

 Although plaintiff in personal injury action was, for a long time after the injury, incapable of memory, his testimony is of some value.

2. **Master and servant** ☞278(6)—Evidence held to warrant recovery under federal act for injury to brakeman from defective running board.

 In action under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) for injuries to a brakeman through violation of the Safety Appliance Act, evidence on issue whether he fell from a car on which the running board was defective, or from another car, *held* to support verdict for plaintiff.

3. **New trial** ☞81—Damages cannot be claimed excessive on account of issue of contributory negligence, not requested to be submitted.

 In brakeman's action for injuries, new trial because of excessive damages would not be granted, on the ground that the question of plaintiff's contributory negligence, as diminishing damages pro rata under the Employers' Liability Act (Comp. St. §§ 8657–8665), was not submitted to the jury, where defendant did not request such submission.

4. **New trial** ☞162(3)—In case of passion or prejudice, court may order new trial on condition of remittitur.

 Where it appears that sympathy, passion, or prejudice has affected the result, a federal court may order that the verdict be set aside and a new

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

trial granted. unless the plaintiff allows judgment to be entered for some lesser amount, for which, in the opinion of the court, the verdict may be sustained, and it then becomes the duty of the court to permit a verdict for the largest amount which the testimony will support.

**5. Damages ☞132(9)—$38,625, for loss of legs, reduced to $30,000.**

Where brakeman, 28 years old, with income of less than $1,800, suffered loss of both legs, verdict for $38,625 would be reduced to $30,000.

At Law. Action by Charles O. Dunton against Walker D. Hines, Director General of Railroads. Verdict for plaintiff, and defendant moves for new trial. Motion overruled, on condition of remittitur.

Matthew McCarthy, of Rumford, Me., and William R. Pattangall, of Augusta, Me., for plaintiff.

Charles B. Carter, of Lewiston, Me., for defendant.

HALE, District Judge. This case is now before the court upon defendant's motion for a new trial, after a verdict for the plaintiff in the sum of $38,625. The defendant asks the court to set aside the verdict:

First. Because the evidence discloses no liability on the part of the defendant; and

Second. Because the amount of the verdict is excessive. The action is brought under the federal Employers' Liability Act (Comp. St. §§ 8657–8665). The declaration sets forth that the plaintiff was a federal employé within the meaning of the act; that the defendant was in violation of the Safety Appliance Act, in that the running board on the roof of car No. M. C. 55129 was out of repair; and that, by reason of this lack of repair, the plaintiff suffered injury, causing great suffering and the amputation of both legs.

On February 7, 1919, the day of the injury, the plaintiff was employed as a brakeman by the United States Railroad Administration. He was then 28 years old. While in the exercise of his duties, in moving out four empty cars from a siding, and while upon the roof of one of the cars, he slipped on the running board, and pitched over upon the track, where he was run over, and suffered the loss of both legs. At the trial he contended that the car upon which he was hurt was the fourth, or rear, car in the train. The defendant contended that the car upon which the injury occurred was not the fourth car—the car having the defective running board—but the third car, which had no defect. The principal issue of fact was upon this point.

[1, 2] 1. The defendant now urges that the physical facts proven and shown in the record are uncontradicted by any competent testimony; that the faulty running board was on the fourth car from the engine; but that the blood, bone, and flesh from Dunton's body, where the train hit him, were found on the wheels and truck frame under the westerly end of the third car; that the train was moving in a westerly direction; that the testimony that Dunton fell from the forward end of the fourth car is inconsistent with these and other physical facts; that this leads to the irresistible conclusion that Dunton could not have fallen from the fourth car; that the proven physical facts are conclu-

sive against inconsistent and irreconcilable oral testimony; that such oral testimony, when confronted with these physical facts, must be regarded as incredible; and that therefore the jury had before it no competent evidence upon which to base its verdict.

The plaintiff testifies that he fell from the fourth car. Although he was, for a long time after the injury, incapable of memory, his testimony is of some value. He is corroborated by Quigley, who testifies that he saw him fall from the fourth car; that the alarm was given at the moment he fell; and that the car could not have proceeded more than half its length after the alarm was given. It appears from the testimony that the last time Dunton was seen on the ground he was standing near the end of the fourth car, just before the train was set in motion, and there is some evidence tending to show that the accident occurred so soon after he went up to the top of the train that he could not have had time to go the length of the car. There was further evidence tending to show that the plaintiff fell from the defective car, and not from the car which had no defect. There was also testimony to the effect that, after the injury, the third car was pushed up the track, over the rails where the plaintiff says he fell; and it is urged that whatever blood stains and clots were found on the third car would have readily got there by this movement of the car over the track. It is true that uncontradicted physical facts should have great weight with the jury; but I cannot say that the testimony offered by the plaintiff is incompetent, or that it should not have been regarded by the jury. It is clearly a case of conflicting evidence. The jury had the witnesses before them. I cannot conclude that they had no competent evidence upon which to base their verdict, or that it is a case where only one inference could fairly be drawn from the whole testimony. I cannot say, then, that the verdict was so clearly against the weight of evidence that I ought to set it aside.

[3] 2. Were the damages excessive? On this question the defendant urges, first, that the matter of contributory negligence should be considered. The learned counsel for the defendant says that, although the issue before the jury was largely, if not entirely, upon the question of liability, and the main controversy was whether the plaintiff fell from the third car or the fourth car, still, there is a question of contributory negligence in the case, for, if the jury found that the plaintiff fell from the fourth car, the evidence relating to the obviously defective condition of the running board of the fourth car, tends to show that the plaintiff was guilty of contributory negligence, and that, if he had been in the exercise of due care, he would have seen the condition of the running board. And the learned counsel invokes the section of the statute, which diminishes the damages pro rata with the contributory negligence. He contends that the damages should have been greatly reduced by the plaintiff's evident contributory negligence; and that this is true, even though the question were not in terms submitted to the jury. The record shows that this question was not submitted to the jury at all, and that the defendant did not request such submission. Upon the record, I am of the opinion that there is nothing in this view of the case which ought to induce me to disturb the verdict.

The important question remains: Were the jury unduly affected in their judgment by sympathy, passion, or prejudice, and thus induced to render a verdict for excessive damages?

No man could help being moved at the recital of the plaintiff's pain, and by the contemplation of the burden he must bear through life. It is too much to expect that the jury should not be affected by sympathy. But even such sympathy must not be what the law calls undue. It must not rise to the height of passion. It must not overthrow the judgment. Were the jury unduly affected, and so induced to render a larger verdict than can be sustained?

[4] In Tomljonovich v. Victor American Fuel Co. (D. C.) 227 Fed. 951, 952, this court held that in a case where it appears that sympathy, passion, or prejudice has affected the result, a federal court may order that the verdict be set aside and a new trial granted, unless the plaintiff allows judgment to be entered for some lesser amount, for which, in the opinion of the court, the verdict may be sustained, and that it then becomes the duty of the court to permit a verdict for the largest amount which the testimony will support. Southern Ry. v. Bennett, 233 U. S. 80, 34 Sup. Ct. 566, 58 L. Ed. 860; Occidental Con. Min. Co. v. Comstock Tunnel Co. (C. C.) 125 Fed. 244; Yurkonis v. Delaware, L. & W. R. Co. (D. C.) 213 Fed. 537, 538.

The court of Maine has said that there is no precise way by which the pecuniary compensation for pain can be estimated; that latitude in judgment must be allowed the tribunal which determines it; but that it is the duty of the court to say what should be regarded as the ultimate bounds, and to see that such bounds are not greatly overstepped. Ramsdell v. Grady, 97 Me. 322, 54 Atl. 763. In O'Brien v. J. G. White & Co., 105 Me. 308, 316, 74 Atl. 721, 724, in speaking for the Maine court, Judge King held that, where the amount awarded would purchase for the plaintiff an annuity in excess of the plaintiff's total yearly earnings, the amount of the verdict should be held to be excessive. He added:

"We think the jury may have failed to appreciate that the amount to be awarded the plaintiff for the diminution in his future earnings should be a sum equal to the present worth of such diminution, and not its aggregate for his expectancy of life."

[5] In the case at bar the plaintiff, at the time of the injury, was a young man of 28, having an income of less than $1,800. He was a man of excellent character, ability, and promise, and it is probable that he would in future have had a much larger earning capacity. But the amount of the verdict, if allowed to stand would, at the present value of money, yield him an income considerably greater than his income at the time of the injury. It is clear that I should take into consideration the depreciation of money at the present time, and the fact that it has a purchasing power much less than in former years. But, after giving due weight to all these considerations, I am forced to the conclusion that the jury were induced by undue sympathy to exceed the limit of reason in their award of damages. Although I warned them, if they came to the question of damages, they must proceed with caution, they

did award damages which, I think, must be held to be excessive. I am of the opinion that a verdict cannot be allowed to stand for more than $30,000. Unless the plaintiff will remit all over that sum, a new trial will be granted because the damages awarded by the jury are excessive.

Accordingly the entry will be:

Motion overruled, if within 30 days after the filing of this opinion, the plaintiff remits all of the verdict in excess of $30,000; otherwise, motion sustained, and new trial granted.