Rockingham, }
Jan. 5, 1943. } No. 3379.

RICHARD H. HAM, *by his executrix* (appearing after his death)

*v.*

MAINE-NEW HAMPSHIRE INTERSTATE BRIDGE AUTHORITY

*and* NEW HAMPSHIRE GAS & ELECTRIC CO.

*William H. Sleeper*, for the plaintiff.

*Sewall, Varney & Hartnett* (*Mr. Sewall* orally), for the Authority.

*Richard E. Shute*, for the utility.

ALLEN, C. J. I. The Authority is a public agency. The status of such an agency, as a branch of the executive department of the state government, was considered in *St. Regis Paper Co.* v. *Water Resources Board*, ante, 164. While it derives its powers and functions by a delegation of authority from the legislatures of two states, this fact does not change its character and modify it into standing as a private corporation. Publicly owned, controlled and conducted, it remains public. While formed by a compact between two states, the compact does "not lead to the increase of the political power or influence of the States affected, and thus encroach . . . upon the full and free exercise of Federal authority" (Const., U. S. Senate Document No. 232, (Rev. & Ann. 1938) 74th Congress, 2d session, page 369), and thus does not require congressional consent under Article 10 of the Federal Constitution for its validity.

The provision of the compact that the Authority may be sued is to be construed in the light of the delegation to it of sovereign power. Beyond the delegation the Authority has no capacity to act. Only within the powers vested in it does it have any existence and may it assert itself. While the two states forming the compact have consented to suits against the agency of its creation, the consent is extended only to suits for conduct and action in the course of its prescribed sphere of authority. It cannot do what it has no power to do. The inherent incapacity of a state agency or official to act in representing the state when authority therefor has not been granted bars liability for an abortive attempt to act in such capacity. The distinction is between power to act and action in the exercise

of power. Power can be wrongfully exercised but there can be no exertion of the lack of power.

The fundamental conception that the state is independent of law and that all law proceeds from it rests upon the view that law, in the legal sense, is a body of rules established and enforceable by society. Since no rules can be enforced against the state, it cannot be guilty of illegal conduct, or, as more often expressed, can do no wrong as a legal injury. It may provide for redress on the basis of personal liability and the manner of redress may be by suit, but in principle the provision is a grant or concession and not a creation of liability in a real sense although in convenience called such. The application of private law to public relations may be directed only by the legislature.

The permission of suits against the Authority created no causes of action for which an individual would not be liable. Obviously an individual in its place could not be sued without legislative permission, since he would represent sovereignty and be its agent and the permission would create a liability not theretofore existing. At most the compact provides for suits against the Authority only as they may be brought against individuals under the general law, with no contemplation of expansion of liability already imposed upon them. The general law as existing and as it might be changed was all that was in mind.

The permission was designed to facilitate the execution of the project placed in the Authority's charge, in establishing business confidence and credit for it, and to secure protection for the public in the performance of the work and operations. But nothing is shown in the compact that the public protection was considered to require redress for action taken in the Authority's name unless the action is also within the range of its powers. The primary public interest of travel, as the reason for the compact, subordinates secondary interests as incidental to it. In some measure the prohibition of seizure of the property in the Authority's name by attachment and execution bears out this difference. To hold the Authority liable for action it is incapacitated to take would tend to hamper the success of the project, and a purpose thus to hold it would require expression in clear and explicit terms. The public would have undue protection if redress from the Authority were authorized for action not in fact taken by it. It would be contrary to good policy.

The line between an attempt to exercise power not granted and an exercise of power in a manner for convenience called wrongful may

not always have sharp distinctions. Conceivably the Authority might be sued for encroachments in the nature of trespass if it took more land than the location of the highway includes. But that is not the situation here. Its officers and agents undertook in its name to acquire for the utility's use by condemnation an easement in the decedent's land. The Authority was without power to do this and hence itself did nothing except to make the claim of power. The final outcome of the invalidity of the claim established the fact that aside from making the claim no action had been taken by it. All that was done in its name, in respect to injury to the decedent, was not done by it, but was the conduct of those assuming to represent it. Their coöperation with the utility was not that of the Authority. The right to sue the Authority is not a right to sue it for the conduct of others acting in its name but not rightfully thus acting.

Aside from the purpose of the compact not to give redress against the Authority when it has not acted, in another view it limits the redress to matters of conduct in the manner of performance of the project, denying any in respect to the management itself in formulating the plans and program in respect to execution of the project and in its general charge and direction.

The delegation of management was of "Subsidiary legislative power" (*Ferretti* v. *Jackson*, 88 N. H. 296, 302), and management of such character embracing the plans, program and direction might have been determined and adopted by the legislature as enacted law. Within this definement management and control are an exercise of valid legislative power. The power underwent legal change to executive power upon its delegation, but there was no change in any real way. The change was merely a transfer of powers and functions from one division of the state government to another. Exercised by the legislature, they would not be reviewable by the courts in any inquiry into the care and motives attending them. Legislation is beyond attack upon such issues. It is not thought that the compact was intended to provide redress for action of the Authority which was in pursuance of its status as an agency created by the legislature and as the assignee of a part of the legislature's own powers.

The consent that the Authority may be sued does not state in terms what matters give rise to the privilege of bringing suit against it, and the inquiry is of the extent of suability, to be ascertained by application of general principles of statutory construction. The courts have the duty to announce and declare the meaning of a

statute, giving a meaning which is not "inconsistent with the manifest intent of the legislature or repugnant to the context of the same statute." P. L., c. 2, s. 1; R. L., c. 7, s. 1.

In employment of the principle that a statute does not alter the common law beyond its express or implied intendment, that law in respect to the liability of executive officers and agents of the State is considered. The compact, if not inherently a statute, has all the elements of one.

The common law upon this subject is not definitely consistent and harmonious. For the discharge of ministerial duties and functions, liability for negligent and malicious conduct therein is in general imposed. For those of a judicial character, it is not. But judicial action is divided between that which amounts to a legal judgment between parties and that which is only the exercise of judgment or discretion without such effect of adjudicating a controversy. When an administrative official or tribunal renders a judgment in a controversy between parties, even if it partakes of an *ex parte* nature, the duty of care and goodwill are not matters of review by the courts. This principle, with few exceptions, has gained consistent approval and following. *Sweeney* v. *Young*, 82 N. H. 159, and cases cited. It is a development of the rule of immunity from liability of the judiciary for their conduct, an immunity which "rests upon a broad ground of public policy" (*Sweeney* v. *Young, supra,* 162). The policy is that the judges should be independent and uncontrolled by external considerations in the discharge of their public duties. Recognition is given to the fact that there is better exercise of judgment and better observance of responsibility when there is freedom from collateral consequences.

In applying the immunity rule to the decisions, as judgments between parties, of administrative officials and boards, the comparable test is made that evidence is received, judgment exercised, and a conclusion of decision reached. But while this is a test of method, it is employed because of the underlying reason for the immunity of judges, to secure freedom from personal consequences for action taken.

In *Moon* v. *Flack*, 74 N. H. 140, the rule of immunity for judicial acts in the nature of judgments was extended to private relations. "To hold otherwise would be to violate fundamental principles relating to the administration of justice and the due and orderly settlement of private contentions." *Ib.*, 142.

In the public interest the test for determining immunity might

well be invoked for any official action in discharge of duties directly owed the state and requiring the exercise of judgment upon the evidence in hand. The reasons for immunity are the same, and seemingly as forcible, as in the case of the judiciary, and extension of immunity for such executive action would be in full logical consistency. But the present state of the common law in respect thereto is not sufficiently stabilized to declare such immunity as a matter of public policy (*Heath* v. *Heath*, 85 N. H. 419, 435), at least without necessity therefor.

Whatever the common law may be as to such action of executive officials when the action is not a decision in a controversy between parties, the legislative purpose not to place obstacles in the path of the due and orderly administration of the project entrusted to the Authority's charge and not to impose restraints upon the Authority in the exercise of its prescribed functions of control and direction is sufficiently expressed to bar redress such as is sought here. If the Authority were to be chargeable for negligence and malice to individuals in its plans and program designed and formed to carry out and successfully achieve the objectives of the project, the tendency would be to restrict full freedom of judgment on issues of policy and in furtherance of the project. While here the action of the Authority does not classify as a legal judgment, the policy of immunity, in protection of the public interest, is properly construed as a declaration implicitly stated in the compact. Promotion of the public interest by provisions detrimental to it is a construction not to be countenanced unless the provisions are explicit to such effect.

As has already appeared, the suits which may be brought against the Authority include none for which it would be liable without a corresponding liability of an individual. As to such immunity, a policy theretofore existing was followed. But that policy is embraced within and collateral to the broader policy contained in the compact that its objectives shall be attained without interference with the primary public interest in view and at the expense of any lesser and subordinate public interest. In controlling purpose the implement of suability was designed to aid efficiency in the construction and maintenance of the project, and not to weaken it. Any minor public interest was protected only as it would not cripple or disturb the general execution of the project.

The question of the liability of those in charge of the executive and directive administration of the Authority and responsible for its general management is outside any occasion for consideration in the

case.   Also, the case calls for no determination of the liability of any of the personnel of the Authority, its officers, agents and employees, for their conduct under non-existent but claimed or purported authority.   As has been said, only under valid legislative authority is any personal action that of the State.   These questions belong to other branches of the law.   No issue of such personal liability is here raised and no view is taken whether or to what extent it exists.

The nonsuit for the Authority was rightly ordered.

II.   The utility committed trespass in its use of the plaintiff's land prior to taking it, under prior condemnation proceedings, and is liable for all damage which "in fact resulted as a direct consequence" of the wrong.   *Brackett* v. *Corporation*, 87 N. H. 173, 175.   If it can be and is found upon trial that the alleged injuries to the decedent in respect to his health and mental suffering were such a consequence of the trespass, damages should be awarded therefor, as well as for the use of his land while the trespass continued.   If it were found that the trespass was malicious, the fact may be taken into account in its bearing in showing greater severity of the wrong done.

For causing the decedent's death, the amendments by new counts to the original declaration and alleging negligence and wilful conduct as causative of the death are to be treated only as including death as an additional element of damage to the decedent.   They cannot be regarded as actions originally brought for causing death, since such actions depend upon the condition that no action for the injury done the decedent and brought by him be then pending.   P. L., c. 302, s. 11; R. L., c. 355, s. 11.

In the present state of the record, however, there can be no recovery for this element of damage.   A decedent's loss of life entitles his estate to recover for his loss of earning capacity (*West* v. *Railroad*, 81 N. H. 522, 528, 529), and the opening statement for the plaintiff in substance and effect disclaims any such loss.

Beyond that loss the law gives no recovery for causing death in an action brought before death.   The statutory action brought after death is not in point, and the extent of recovery under it does not call for discussion.   *West* v. *Railroad*, *supra*, 529.   In the nature of things one may not himself receive compensation for the wrongful loss of his right to live, and claim for the loss cannot be an asset of his estate in any fair view of the compensatory principle of allowable elements of damages.   While allowance for bodily and mental suffering is granted as in justice imposed on a wrongdoer, the estimate

must be within the bounds of justice. To allow for the enjoyment of continued life would mean an entrance into a boundless field of arbitrary assessment, for which no policy of the law exists. The limitation of damages in actions for death brought under the statute indicates that the policy for any allowance is of restriction. It is sometimes said that a wrongdoer is better off in causing death than in causing severe and lasting injury without death. If this may be considered in the balance of adjustments in social relations, it does not serve to outweigh the reasons which bar allowance for damage on this account.

The *West* case held, as a matter of statutory construction, that the survival by statute of the action included a survival of all the elements of damage, of which loss of earning capacity is one. Since survival is unknown to the common law, a new element of damage by reason of the survival may not be judicially declared. And it may be remarked that the decision in the *West* case is more liberal in construction of the statute than the construction generally given to survival statutes. 97 A. L. R. 823, Anno.; 15 Am. Jur. 488, s. 79.

III. The plaintiff excepted to a ruling that the question of the necessity for the location and maintenance of the utility's transmission line across the decedent's land was immaterial. As the ruling is construed, it means that the necessity had been determined by the Public Service Commission and thus became *res adjudicata,* as between him and the utility. Thus construed, it was correct. *Salisbury* v. *County,* 59 N. H. 359; *Barry* v. *Little,* 74 N. H. 319; *State* v. *Corron,* 73 N. H. 434, 435; *State* v. *Stevens,* 78 N. H. 268, 270; *Opinion of the Justices,* 87 N. H. 492, 494; *Petition of New Hampshire Gas &c Co.,* 88 N. H. 50, 58. The fact of the necessity may conceivably be relevant during the trial upon the issue of malice.

Although the necessity was undetermined when this action was brought, it has since become determined, and the determination has all the force and effect of a final adjudication on which the judgment of condemnation was predicated. The situation is no different than that frequently arising of uncertainties becoming certainties during the period between the institution of suit and its trial.

*Case discharged.*

All concurred.