Kalodner, Chief Judge, and Staley, Circuit Judge, dissented.

**Thomas DOWNIE, Appellant,**

**v.**

**UNITED STATES LINES CO., Appellee.**

**No. 15026.**

United States Court of Appeals Third Circuit.

Argued Feb. 18, 1965.

Reargued Dec. 9, 1965.

Decided April 1, 1966.

Marvin I. Barish, Philadelphia, Pa. (Abraham E. Freedman, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellant.

Thomas F. Mount, Philadelphia, Pa. (Rawle & Henderson, Phidadelphia, Pa., on the brief), Paul D. Hardy, Philadelphia, Pa., of counsel, for appellee.

Before KALODNER, Chief Judge, and McLAUGHLIN, STALEY, HASTIE, GANEY, SMITH and FREEDMAN, Circuit Judges.

WILLIAM F. SMITH, Circuit Judge.

This is an action for personal injuries under section 33 of the Merchant Marine Act of 1920, 46 U.S.C.A. § 688, which incorporates by reference and makes applicable the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59. The present appeal by the plaintiff is from a judgment entered on a jury verdict in his favor. The only issue raised is one of damages which must be decided under the cited statutes and the common law principles as interpreted and applied by the federal courts. Dice v. Akron, C. & Y. R. Co., 342 U.S. 359, 361, 72 S.Ct. 312, 96 L.Ed. 398 (1952); Pittsburgh National Bank v. Pennsylvania Railroad Co., 315 F.2d 606, 608 (3rd Cir. 1963) and the cases therein cited. The question is whether the prospective curtailment of one's life expectancy by injury, independent of the economic loss sustained as a result of such curtailment, is a separate and distinct item of the damages recoverable in such an action.

At the time of his injury the plaintiff, an employee of the defendant, was 52 years of age and had a normal life expectancy of approximately 18 years. Early in the morning of November 5, 1958, while aboard ship, he suffered a myocardial infarction, an irreversible heart injury, which shortened his normal life expectancy. Admittedly this injury was not caused by any act or omission of the defendant. The claim for damages was based solely on the ground that subsequent to the heart attack the defendant's servants and agents were guilty of negligent conduct which aggravated the myocardial infarction. There is evidence in the record from which the jury could have found, as it apparently did, that the heart injury was aggravated, as alleged and that this aggravation was the proximate cause of a further curtailment of the plaintiff's life expectancy.

The plaintiff contended in the court below that the diminution of his life expectancy was a compensable injury

in and of itself and therefore includable as a separate element of the recoverable damages. Over the objection of the defendant, and pursuant to the written request of the plaintiff, the issue of damages was submitted to the jury on this theory.

The trial judge instructed the jury in pertinent part as follows:

"Then the plaintiff contends that though the heart attack would have foreshortened his life expectancy, that the aggravation that he contends he suffered has further shortened it, and that for the period for which it was further shortened he claims damages.

"If you so find that it was aggravated, that is the pre-existing damage to his heart, and that that foreshortened his life expectency beyond that period of foreshortening which resulted from the heart attack unaggravated, then you will include in the total of your answer to Question 4 fair and reasonable compensation for such further foreshortening of life expectancy.

"In that respect I will read and affirm plaintiff's point 12.

'If you find that the plaintiff is entitled to damages and that as a result of the defendant's negligence plaintiff has suffered a shortening of his life expectancy then you may award the plaintiff a fair and reasonable sum as in your best judgment will compensate him for the shortening of his life expectancy.'

That I affirm in the context of what I have just said to you a moment ago."

The issue of damages was submitted to the jury on carefully framed interrogatories as authorized under rule 49, Fed.Rules Civ.Proc., 28 U.S.C.A.[1] The jury made a general award of $86,900, which included a special award in the amount of $25,000 [2] for the prospective diminution of the plaintiff's life expectancy. On motion of the defendant the trial judge modified the verdict by eliminating therefrom the special award and entered judgment on the verdict as modified. Downie v. United States Lines Company, D.C., 231 F.Supp. 192. The plaintiff argues that this modification of the jury verdict was error.

The plaintiff here contends, as he did in the court below, that the reduction of one's life expectancy is in and of itself compensable and therefore a proper element of the recoverable damages. He cites no cases, either federal or state, to support this view and we have found none. The plaintiff relies primarily on a line of English and Canadian cases, the first of which was decided in 1935. Flint v. Lovell, 1 K.B. 354, 97 A.L.R. 815. Therein it was held that the shortening of one's life expectancy by reason of injury constitutes an element for which damages may be recovered. Apparently the rule has not proved satisfactory and the English courts have experienced considerable difficulty in its application. See Annotation, 131 A.L.R. 1351–1356; Comments, The Measure of Damages for a Shortened Life, 22 U. Chi.L.Rev. 505, 513 (1954). The rule was modified in later cases and as modified limits the amount of recovery. *Ibid.*

The novel doctrine of the English cases has failed to gain acceptance in the courts of this country. Thus far the state courts which have considered the doctrine have rejected it for various reasons which are not relevant here. Rhone v. Fisher, 224 Md. 223, 167 A. 2d 773 (1961); Ham v. Maine-New Hampshire Inter. Bridge Authority, 92 N.H. 268, 30 A.2d 1 (1943); Lake Erie & W. R. Co. v. Johnson, 191 Ind. 479, 133 N.E. 732 (1922); Ramsdell v. Grady, 97 Me. 319, 54 A. 763 (1903); Richmond Gas Co. v. Baker, 146 Ind. 600, 45 N.E. 1049, 36 L.R.A. 683 (1897). The

---

1. The trial judge made an effective use of the procedure in this case. A similar use could be made of it in all cases but particularly in those involving complicated or doubtful issues. See our opinion in Eich-

mann v. Dennis, filed July 12, 1965, 3 Cir., 347 F.2d 978.

2. The amount of the special award was stated in answer to a specific interrogatory.

federal courts have similarly rejected it in two cases which involved the application of state law. Farrington v. Stoddard, 115 F.2d 96, 131 A.L.R. 1344 (1st Cir. 1940); O'Leary v. United States Lines Co., 111 F.Supp. 745 (D.Mass. 1953).

A comprehensive analysis of the English cases may be found in Annotations, 97 A.L.R. 823–826 and 131 A.L.R. 1351–1356. See also Rhone v. Fisher, supra. The rule of these cases appears to be predicated on the theory that the shortening of one's life expectancy is *per se* a compensable element of damages in an action for personal injury. We believe that the rule is not feasible because of the incalculable variables which may enter into any attempt to place a value on life; absent some workable criteria, a damage award would be base speculation. Although we are unwilling to adopt the *per se* theory it does not follow that damages for the curtailment of one's life expectancy, based on measurable components of injury, are not recoverable. We believe that a fair and just result can be achieved by resort to the rules of damages usually applied in tort actions.

It is the general rule that a seaman who has been injured by the tortious conduct of his employer, or his employer's servants, is entitled to an award in damages commensurate with the nature and extent of his injuries. He is entitled to reimbursement for his loss of earnings, past and prospective, any impairment of his earning capacity, medical expenses incurred and to be incurred, and any other economic loss he may have sustained or is likely to sustain. Bartholomew v. Universe Tankships, Inc., 279 F.2d 911, 916 (2nd Cir. 1960), cert. den. 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030. In addition, he is entitled to redress for his physical injury, including the effects thereof, such as pain, suffering, mental anguish, discomfort and inconvenience. These are the items customarily taken into consideration in an award of damages.

If the injuries are permanent in nature and result in an impairment of earning capacity, a seaman is entitled to reimbursement for such impairment including, but not limited to, his probable loss of future earnings. Wiles v. New York, Chicago and St. Louis Railroad Co., 283 F.2d 328, 332 (3rd Cir. 1960), cert. den. 364 U.S. 900, 81 S.Ct. 232, 5 L.Ed.2d 193; Vickers v. Tumey, 290 F.2d 426, 434, 435 (5th Cir. 1961); See Tullos v. Corley, 337 F.2d 884, 887 (6th Cir. 1964). Damages resulting from the impairment of earning capacity and the probable loss of earnings must be measured on the basis of life expectancy at the time of injury. *Ibid.* The award must be based upon the probable pecuniary loss reduced to its present net worth. Conte v. Flota Mercante Del Estado, 277 F.2d 664, 669 (2nd Cir. 1960). The same rules should be applied where, as here, an element of the permanent injury is the consequent curtailment of the seaman's life expectancy. See McCormick on Damages, § 86, p. 303.

The injured seaman is also entitled to compensation, again based on life expectancy at the time of injury, for the physical and mental effects of the injury on his ability to engage in those activities which normally contribute to the enjoyment of life, including, for example, his avocations. Dagnello v. Long Island Railroad Company, 289 F.2d 797 (2nd Cir. 1961). See Bassett v. Milwaukee, Northern Ry. Co., 169 Wis. 152, 170 N.W. 944, 945 (Sup.Ct.Wis.1919); Kasiski v. Central Jersey Power and Light Co., 4 N.J.Misc. 130, 132 A. 201 (Sup.Ct.N.J.1926); Annotations, 120 A. L.R. 535–543. The specific elements which may enter into an award of damages under this rule must necessarily depend upon the proofs.[3] There are no

---

3. Examples of provable elements are: inability to dance, bowl, swim or engage in similar recreational activities; inability to perform customary household chores; and, inability to engage in the usual family activities.

348

precise criteria by which these elements
may be evaluated but they are measur-
able to the same extent as pain, suffer-
ing and mental anguish.

The rule discussed in the foregoing
paragraph has been applied in those cases
in which the victim of the tortious con-
duct sustains a disabling injury, such
as amputation of a limb, disfigurement,
or a brain disorder. We are of the opin-
ion that justice demands the application
of a similar rule where, as in the in-
stant case, an element of the permanent
disability is the consequent curtailment
of life expectancy. The denial of re-
covery for this curtailment benefits the
tort feasor at the expense of his victim.

■ The trial judge adequately and
correctly instructed the jury as to the
right of the plaintiff to recover his eco-
nomic losses, determined on the basis
of his life expectancy immediately be-
fore the "aggravation of his heart dam-
age." The issue raised by the plaintiff's
claim for damages, based on the diminu-
tion of his life expectancy, was submit-
ted to the jury on the *per se* theory. The
instructions were inadequate in that
they failed to delineate the various fac-
tors that the jurors might have con-
sidered in arriving at a fair and just
award. Under these circumstances it
must be assumed that the answer to the
interrogatory relating to this issue was
predicated on speculation.

The judgment of the court below will
be reversed and the action will be re-
manded for a new trial solely on the
issue of damages.

KALODNER, Chief Judge (dissent-
ing).

I disagree with the majority's view
that the wrongful shortening of one's life
expectancy is not a separate element of
damages in a Jones Act [1] case.

I am of the opinion that the law ac-
cords a right to life and its enjoyment,

and that the invasion of this right is
properly compensable as a separate ele-
ment of damages.

As one text writer has graphically
epitomized it, "the shortening of life
through injury involves an amputation
of life substance and so an absolute and
irremediable loss." [2]

The English courts have long allowed
recovery for shortening of life expect-
ancy as a separate and distinct element
of damages. Benham v. Gambling, A.C.
157, 166, 1 All.E.R. 7, 12 (1941); Rose
v. Ford, A.C. 826, 3 All.E.R. 359 (1937);
Flint v. Lovell, 1 K.B. 354, 97 A.L.R.
814 (1934); Phillips v. The London
and South Western Railway Company,
5 Q.B. 78 (1879).

The English rule was succinctly stated
by Lord Atkin, in Rose v. Ford, supra,
as follows (p. 834):

"It does not seem to me necessary to
say that a man has a *personal* right
of the nature of property in his life,
so that when it is diminished he loses
something in the nature of valuable
property. * * * I am satisfied
that the injured person is damnified
by having cut short the period dur-
ing which he had a normal expecta-
tion of enjoying life: and that the
loss, damnum, is capable of being es-
timated in terms of money: and that
the calculation should be made. * * *

"I am of opinion therefore that a
living person can claim damages for
loss of expectation of life. * * *"
(emphasis supplied)

Lord Wright, in concurring, said (p.
848):

"A man has a legal right that his life
should not be shortened by the tortious
act of another. His normal expectancy
of life is a thing of temporal value,
so that its impairment is something
for which damages should be given.
* * *

1. 46 U.S.C.A. § 688.

2. Hubert Winston Smith, Director of the
Law-Science Institute, Tulane University;
"Psychic Interest in Continuation of One's
Own Life: Legal Recognition and Protec-
tion", University of Pennsylvania Law Re-
view, Vol. 98, page 781, note 1 (1950).

"In one sense it is true that no money can be compensation for life or the enjoyment of life, and in that sense it is impossible to fix compensation for the shortening of life. But it is the best the law can do. It would be paradoxical if the law refused to give any compensation at all because none could be adequate."

In refusing to subscribe to the English doctrine the majority has cited two federal and several state court cases in support.

With respect to the state cases it must immediately be said that they are without precedential value since this is a Jones Act case and federal law applies. The Jones Act is "remedial, for the benefit and protection of seamen who are peculiarly the wards of admiralty. Its purpose was to enlarge that protection, not to narrow it. * * * Its provisions, * * * are to be liberally construed to attain that end." The Arizona v. Anelich, 298 U.S. 110, 123, 56 S.Ct. 707, 711, 80 L.Ed. 1075 (1936).

The federal cases, Farrington v. Stoddard, 115 F.2d 96, 131 A.L.R. 1344 (1 Cir. 1949) and O'Leary v. United States Lines Co., 111 F.Supp. 745 (D.Mass. 1953) are inapposite here for these reasons: (1) in neither case was the action instituted by the person whose life had been wrongfully shortened; (2) neither case was one under the Jones Act; (3) in both cases it was held that the local state survival and death statutes did not permit the estates to recover damages, per se, for a shortened life.

To what has been said earlier with respect to the inapplicability of the state court decisions cited by the majority this may be added:

In Ham v. Maine-New Hampshire Interstate Bridge Authority, 92 N.H. 268, 30 A.2d 1 (1943), and Ramsdell v. Grady, 97 Me. 319, 54 A. 763 (1903), the actions were not by one whose life had been shortened, but by his estate, and further, in neither was recovery sought for a shortened life as an independent element of damages.

In Richmond Gas Co. v. Baker, 146 Ind. 600, 45 N.E. 1049, 36 L.R.A. 683 (1897), the court's holding that the plaintiff could not recover for the shortening of her life was premised on the specious assumption that since the death of a person could not be complained of as a legal wrong in a civil action at common law, curtailment of life is not an actionable injury. It is apparent that the court was persuaded to its view by precedents resting upon the authority of Baker v. Bolton, 1 Camp. 493 (1808) where it was said:

"In a civil court the death of a human being could not be complained of as an injury."

It is equally apparent that the court (1) did not consider the fact that Lord Campbell's Act of 1846, which permitted so-called survival actions, had made obsolete Baker v. Bolton's holding, and (2) that it did not seem aware of the fact that an English court in 1879, in Phillips v. London and South Western Railway Company, supra, had allowed damages to a plaintiff for his shortened life.

In Lake Erie & W. R. Co. v. Johnson, 191 Ind. 479, 133 N.E. 732 (1922), where it was also held that damages are not recoverable for a shortened life, the court, without discussion, premised its holding on its earlier decision in *Richmond Gas*.

Rhone v. Fisher, 224 Md. 223, 167 A. 2d 773 (1961), affords some measure of nourishment to the majority's position. There, the court refused to subscribe to the English doctrine, and ruled that a living plaintiff cannot recover, as a separate item, damages for a shortened life. The ruling of the court, is, however, "watered down", so to say, by its statement that the trial judge had properly charged the jury "that they might consider the evidence relating to the shortening of life 'in considering the seriousness of the injury and the consequent pain and suffering and the mental anguish, if any, to which the plaintiff has been and will be subjected in the future.' "

In the instant case the trial judge properly charged the jury that it could compensate the plaintiff for the wrongful shortening of his life expectancy as a separate element of damages. He erred when he later struck from the jury's verdict its allowance of $25,000 for the curtailment of the plaintiff's life span. I would reverse with directions to reinstate the jury's verdict as rendered by it.[3]

The majority's ruling that the shortening of one's life span is not *"per se* a compensable element of damages * * * because of the incalculable variables which may enter into any attempt to place a value on life" is in irreconcilable conflict with its simultaneous declaration that "damages for the curtailment of one's life expectancy" may be awarded when "based on measurable components of injury" since such curtailment is a "permanent injury", and "the denial of recovery for this curtailment benefits the tort feasor at the expense of his victim".

The "measurable components of injury" which the majority lists as "provable elements", in footnote 3 of its opinion, are "inability to dance, bowl, swim or engage in similar recreational activities; inability to perform customary household chores; and, inability to engage in the usual family activities."

I cannot subscribe to a doctrine which sanctions compensation for "inability to dance, bowl, swim or engage in similar recreational activities" but denies compensation for the loss of the right to life itself; the right to enjoy the companionship of loved ones; the right to see the glorious dawn and sunset, to feel the caress of gentle breezes or the invigorating sting of winter winds, to hear the murmur of the idling brook and the music of warbling birds, to smell the sweet fragrance of nature's flowers, and to taste the diet of life itself.

The distilled essence of the majority's doctrine is that the part is greater than the whole; that the fragments of life

which it specifies have ascertainable value, but that the total fabric and structure of life itself has no separate ascertainable value.

The courts of this land have time and again ruled that damages are recoverable for loss of enjoyment of life.

In Haynes v. Waterville & O. St. Ry., 101 Me. 335, 64 A. 614 (1906), where a young boy had his hand amputated, the court stated that the loss took a great deal of enjoyment out of the boy's prospective life and that loss of earning power was by no means the extent of the injury.

In King's Indiana Billiard Co. v. Winters, 123 Ind.App. 110, 106 N.E.2d 713 (1952), the jury in fixing damages for personal injuries was required to consider that the plaintiff was deprived of loss of privileges and enjoyment common to men of his class.

In Sox v. United States, 187 F.Supp. 465 (D.Del.1960), the court allowed recovery for "deprivation of normal life expectancy" (p. 469) to an infant plaintiff who was grievously maimed for life in the sixth month of her mother's pregnancy.

As the Michigan Supreme Court has said:

"We are aware, of course, that there are those who say that the life of a human being is impossible to value, that although we will grapple mightily with the value of the life of a horse, of a team of mules, we will stand aloof where a human is concerned and assign it no value whatever. This kind of delicacy would prevent the distribution of food to the starving because the sight of hunger is so sickening. But we cannot shirk this difficult problem of valuation. In the cases coming to us a life has been taken and it is our duty, as best we can, to put a fair valuation on it." Wycko v. Gnodtke, 361 Mich. 331, 105 N.W.2d 118, 122 (1960).

In rejecting the English doctrine that the shortening of life expectancy is a

---

3. The opinion of the District Court is reported at 231 F.Supp. 192 (E.D.Pa.1964).

separate and distinct element of damages, the majority in its stead enunciates guidelines for instructions to a jury which will open a Pandora's Box. One can readily envision resort to appellate review, when a trial judge in strict adherence to the majority's guidelines, fails to include in his charge of "measurable components of injury", a component such as, for example, the loss of the right of a parent whose life has been shortened to share in the upbringing of his child or children.

The only workable basis of consideration of the issue of value of a shortened life span is its submission to a jury of one's peers as a separate element of damages. The jury can be counted on to bring to bear in its consideration of such an element the consensus of the common sense of its members, their collective experience and judgment, and their panoramic sweep of all aspects of the issue.

One need only point to the fact that in the instant case the jury's award for the 8-year shortened span of the plaintiff's life was in the amount of $25,000—approximately $3,000 a year—a sum moderate in its proportions.

Judge STALEY joins in this dissent.